JOSEPH T. MARTIN, Appellant, *v.* WILLIAM A. FARNSWORTH, Respondent.

The powers of a special agent are limited by the terms in which they are conferred, and must be strictly pursued. The principal is not bound by his acts beyond the limits of the authority delegated.

Defendant's vessel being ashore at the Delaware breakwater, he telegraphed to M. & D. in New York as follows: "Send me a small tow-boat. * * * Make the best bargain you can." *Held* (ALLEN, J.; GROVER and FOLGER, JJ., concurring), that the authority contemplated the hiring of a boat already manned and equipped, and in the absence of proof of a necessity for such action or of proof of the existence of a custom or usage to that effect, the agents were not authorized to assume on behalf of defendant the perils of the service or the risks of the voyage, or to insure against the negligence of any one employed in the navigation or handling of the boat.

(Argued May 23, 1872; decided June 4, 1872.)

APPEAL from order of the General Term of the Superior Court of the city of New York, reversing a judgment in favor of plaintiff, entered upon a verdict, and ordering a new trial.

This action was brought to recover for the loss of plaintiff's steam-tug, May Queen, through the alleged negligence of defendant's servant.

Defendant owned the bark Antietam.    In November, 1862, it being ashore at the Delaware breakwater, he telegraphed from Lewes, Delaware, to Metcalf & Duncan, New York, as follows :

" *To Metcalf & Duncan :*
    " Send me small tug-boat.    \*    \*    \*    Make the best trade you can.

" W. A. FARNSWORTH."

Duncan, one of the firm of Metcalf & Duncan, chartered plaintiff's steam-tug May Queen at an agreed rate per hour, defendant to furnish coal, and to furnish or pay a pilot.    Plaintiff found one Cutler, a coast pilot, and brought him to Duncan, who hired him.    The vessel sailed on the 14th November. On the 17th, while Cutler was at the helm, the tug came in collision with the United States gunboat Wamsutta and the May Queen was sunk.

*Aug. F. Smith* for the appellant.    As no motion was made for new trial on the merits, nothing was before the General Term but the validity of the exceptions.    (Code, § 265; *Keyes* v. *Devlin,* 3 E. D. Smith, 518 ; *Benkard & Hutton* v. *Babcock,* Ct. of App., decided January, 1870.)    Defendant was responsible for the negligent acts of the pilot.    (Story on Bailments, §§ 399, 400.)

*R. C. Benedict* for the respondent.    If any error was committed on trial, the order of General Term must be affirmed. *Sanford* v. *Eighth Ave. R. R. Co.,* 23 N. Y., 343 ; *Cook* v. *N. Y. C. R. R. Co.,* 3 Trans. App., 8 ; *Macy* v. *Wheeler,* 30 N. Y., 231 ; *The People* v. *Lacoste,* 27 id., 197.)    Duncan had no authority to bind defendant for the negligence of the pilot, or to hire one.    (1 Par. on Con., 48 ; *Dows* v. *Perrin,* 16 N. Y., 330 ; *Smith* v. *Tracy,* 36 id., 86 ; *Gibson* v. *Colt,* 7 J., 393 ; *Munn* v. *Com. Co.,* 15 id., 54 ; *Davenport* v. *Buckland,* Hill & D. Supplt., 75 ; *Denning* v. *Smith,* 3 Johns. Chanc., 332 ; *Delafield* v. *The State of Illinois,* 26 Wend., 527 ; *Batty*

v. *Carswell*, 2 Johns., 48; *Sandford* v. *Handy*, 23 Wend., 268; *The Fauquier*, 11 Law R. [N. S.], p. 12; *Hawtayne* v. *Browne*, 7 M. & W., 595; *The May Queen*, 1 Newb., 472; *The Schooner Freeman*, 18 How. U. S. Sup. Ct., p. 182; *Grant* v. *Norway*, 2 Eng. L. and Eq., 337; *Hubbersty* v. *Ward*, 10 id., 551; *Coleman* v. *Riches*, 29 id., 323; *McCready* v. *Woodhull*, 34 Barb., 80; *Beach* v. *Vandewater*, 1 Sand., 276; *Zachrisson* v. *Ahman*, 2 id., 68; *Wright* v. *The Central Railroad and Banking Co.*, 16 Geo., 38.) Plaintiff having found the pilot, cannot claim damages for his incompetency. (*The Miletus*, 5 Blatch., 335.)

ALLEN, J. The question of most importance presented upon this appeal, and which lies at the foundation of the plaintiff's claim, is as to the agency of Metcalf & Duncan for the defendant, and the extent of their powers. It is presented by the exceptions to the ruling of the judge at the trial that the agents named had authority to employ a pilot to take charge of the steam tug on her voyage from New York to Delaware breakwater. If this was right the other instructions to the jury, in answer to the requests of the counsel for the plaintiff, were properly given as the legal sequence of the main propositions; and it would be difficult to disturb the verdict, except, perhaps, upon some technical mistake of the judge in making response to the score and more of requests made by the defendant's counsel for instructions to the jury.

It would not be strange if some technical error was committed in attempting to respond at the instant to so many legal propositions adroitly put, and in forms involving nice distinctions and great refinements. The whole case was substantially disposed of, so far as was necessary to the fair and full submission of the questions of fact to the jury, with such instructions as were needful to enable them to give an intelligent verdict by the judge in answer to the four requests of the plaintiff's counsel; and the first question is as to the character and extent of the agency of Metcalf & Duncan.

If the judge erred as to that the verdict and judgment were rightly reversed, and it will not be necessary to consider the other questions made. That the agency of the persons named was special, and known to the plaintiff to be special and not general, is not disputed. The authority conferred was for a special purpose, and confined to a single act, and is within the definition of a special, as distinguished from a general, agency. (Story on Agency, § 17; *Anderson* v. *Coonley*, 21 W. R., 279.)

In the case of a special agency the principal is not bound by the acts of the agent beyond the limits of the authority conferred. The authority must be strictly pursued; and it is the duty of a party dealing with a special agent to ascertain and know the extent of his powers. If he omits to do so it is at his peril, and he takes the risk of the authority. He is held chargeable with notice of the extent of the agent's authority as it exists in fact. (*Munn* v. *Commission Co.*, 15 J. R., 44; *Beals* v. *Allen*, 18 id., 363; *Delafield* v. *State of Illinois*, 26 W. R., 192.)

While the powers of a general agent may be liberally construed according to the necessities of the occasion and the course of business, those of a special agent are limited by the terms in which they are conferred. The authority relied upon in this case was in writing, and consisted of a dispatch by telegraph from the principal to the agents, which was communicated to the plaintiff.

There was nothing concealed from the plaintiff; and the assumed and apparent authority of the agent was precisely that actually conferred. The telegraph dispatch was, "Send me small tow-boat. * * Make the best bargain you can." The plaintiff was told by the agents, upon their first application to him, that they had received "a telegraphic dispatch from Lewes to send down a small tug-boat to the Antietam." The bark Antietam, owned by the defendant, was ashore at the Delaware breakwater, and the tug was wanted to aid in getting her afloat.

The want was immediate and the purpose temporary; and

the authority, construed with respect to the occasion and the necessities of the principal, necessarily called for the employment of a tug-boat, already manned and equipped, ready for immediate service.

It did not contemplate, and cannot, in the absence of any necessity for such action, or evidence of the existence of a custom or usage, be construed as authorizing the charter of a boat without equipment, supplies or crew, and the fitting her out for the brief service required. Such a course would greatly delay the sending of the relief boat when dispatch was needful, perhaps, to save the vessel ashore and in peril, and increase the cost to the defendant, and leave him, at the end of the few days for which the service of the tug should be needed, with all the unused equipments and supplies on hand. If it had been shown that a tug-boat could not have been had upon other terms or except upon the condition that she was to be manned or officered by the defendant, and to be taken to the place designated at his risk, it is possible that the authority to bind the principal to this extent might be implied as one of the necessary incidents of the power conferred. But there was no such proof given. On the contrary, the clear inference is that tugs in abundance could have been had in New York already fully manned, equipped and supplied for the voyage.

The authority was not understood by the plaintiff to extend to the hiring of a boat, to be taken from New York to the Delaware breakwater by the servants and agents, and at the risk, of the defendant. The hiring was of the boat, with her master, crew and equipments, at an agreed rate per hour, the owner hiring and paying the crew, and furnishing all the supplies except coal, for which the defendant was to pay.

The power was fully executed by the hiring of the boat, with her crew and equipments, to go upon the expedition; and if, as a part of that hiring, the agent agreed to furnish a pilot for the voyage, as he did agree to furnish coal, it was within the terms of the powers conferred as a part of the

"trade," one of the terms of the contract which he was authorized to make.

The agreement to furnish either coal or pilot was but an agreement to pay the cost of both in addition to the hourly compensation of $4.50 agreed upon, and thus construed, it bound the principal. But he was not in terms authorized, and the necessities of the agency did not require, and there was no custom or usage proved, authorizing the agent, in addition to the terms agreed upon, to assume in behalf of his principal the perils of the service, or the risks of the voyage, or insure against the negligence of any one employed in the navigation or handling of the boat.

He was authorized to agree upon the terms of the hiring, and, probably, might have bound his principal to pay the premium of an insurance; but he could not make the principal an insurer. He was authorized to contract with the owner that the latter should, with the crew and such additional men as should be necessary, take the boat to the stranded vessel, and there aid in taking her to a place of safety; but this did not include an authority to engage for the care and skill of the original crew, or such additional men as might be employed.

Had the parties reduced the contract to writing, in the form now claimed in behalf of the plaintiff, it would have provided in terms that the defendant should not only hire and pay for the pilot sought out and selected by the plaintiff, and of whose competency and skill there is no complaint, but should also insure the plaintiff against loss arising from any neglect or want of care in the pilot; and that such pilot should have and take the sole control and command of the vessel and crew, including the master, during the voyage, and that the voyage should be at the risk of the defendant.

This would have been manifestly in excess of the authorization. By no reasonable interpretation can the dispatch be regarded as giving the agent authority in any form to relieve the owner and master from the perils of the voyage, and devolve the same upon the defendant as the hirer of a pilot

who should undertake and have the sole direction and management of the boat and crew during its passage down the coast.

But little aid can be derived from adjudged cases, save to deduce from them the general principles applicable to every special agency. Each case must depend on its own circumstances, and every power construed in reference to the occasion upon and purpose for which it is given. But all the cases are true to the doctrine which restricts special agents to the terms of their powers. (*Nixon* v. *Palmer*, 4 Seld., 398; *Gibson* v. *Colt*, 7 J. R., 390; *Nixon* v. *Hyserott*, 5 id., 58; *North River Bank* v. *Aymar*, 3 Hill, 262; *Rossiter* v. *Rossiter*, 8 W. R., 494; Story on Agency, § 126 and note; id., § 132 and note [3]; *Smith* v. *Tracy*, 36 N. Y., 79.) The agent had not the power now claimed for him; and his contract, if to the effect claimed, did not bind the principal.

The order granting a new trial should, for the reasons stated, and without considering the reasons assigned by the court below, be affirmed and judgment absolute given for the defendant.

GROVER and FOLGER, JJ., concur.

CHURCH, Ch. J., and PECKHAM, J., concur in result.

ANDREWS and RAPALLO, JJ., absent.

Judgment accordingly.