(25 Misc. Rep. 173.)

### JOSEPH et al. v. STRULLER et al.

(Supreme Court, Appellate Term. November 10, 1898.)

1. STATUTE OF FRAUDS—SALES—ACCEPTANCE OF PART OF GOODS.

The receipt and acceptance by the buyer of a part of the goods sold takes the case out of the statute.

2. EVIDENCE OF AGENCY.

One who has acted as an agent may testify as to his authority, where it is not in writing.

3. SAME—CONCLUSIONS.

A person who had acted for a party in a business transaction was asked, "Did you have any power or authority to change that contract?" Held, that the question was not objectionable as calling for a conclusion.

4. SPECIAL AGENTS—EXTENT OF AUTHORITY—THIRD PERSONS.

Third persons dealing with one known to be a special agent are put on their inquiry as to the extent of the authority conferred on such agent.

5. SAME.

One who deals with a person known to be a special agent cannot rely on the agent's claim of authority to act in a transaction merely because he went to the telephone, and conferred, as defendant supposed, with his principal in regard to closing the transaction, and then agreed to the terms of the contract.

Appeal from municipal court, borough of Manhattan, Seventh district.

Action by Sarah A. Joseph and another against Riccardo Struller and others to recover damages for a breach of a contract. From a judgment for defendants, plaintiffs appeal. Reversed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

S. D. Levy, for plaintiffs.

H. G. K. Heath, for defendants.

GILDERSLEEVE, J.    The facts of the case, as disclosed by the evidence, seem to be as follows, viz.:

On or prior to October 18, 1897, plaintiffs and a representative of defendants entered into some sort of an arrangement, the terms of which were verbal and are in dispute, for the purchase by the plaintiffs from defendants of Mexican silver dollars; and on the said 18th of October, 1897, the plaintiffs wrote to the defendants the following letter, to wit:

"To Messrs. Struller, Myer & .Julia—Dear Sirs:    We hereby confirm the purchase from you of about forty thousand Mexican silver dollars, at forty-five cents; the same to be delivered at our office either October 18th, or on the morning of the 19th inst.
"We remain very respectfully yours,    Silberman & Joseph."

The plaintiffs at that time were doing business under the firm name of Silberman & Joseph.    This letter was received by defendants on said 18th of October, and was retained by them, without any written answer being ever given; but defendants claim that there was a subsequent conversation between the defendant Julio J. Julia and one William Brill, an employé of plaintiffs, at which the terms of the contract were fixed.    On the 19th of October, 1897, the defendants delivered to the plaintiffs 19,000 Mexican silver dollars, and received in return the plaintiffs' check for $8,100, for which defendants gave the following receipt, to wit:

"October 19th, 1897.
"Received from Silberman & Joseph $8,100.00, in payment of 18,000 Mexican silver dollars, on account; same being commercial, and count guarantied.    ·Struller, Myer & Julia."

As the count was guarantied, the plaintiffs did not examine the number of Mexican silver dollars so delivered; and it was not until the following day that both plaintiffs and defendants learned that a mistake had been made by defendants, who had delivered 1,000 Mexican dollars in excess of the amount called for by the receipt. Later on this 19th day of October, 1897, the defendants delivered to plaintiffs 315 more Mexican silver dollars, and received in return another check of the plaintiffs for $141.75.    On October 20th, the day following the deliveries above set forth, the plaintiffs wrote to defendants' the following letter, viz.:

"Messrs. Struller, Myer & Julia—Dear Sirs:    We paid you yesterday for 18,315 Mexican silver dollars, which we now find to be 19,315, and therefore you have made an error against yourselves of 1,000 Mexican silver dollars.    However, by reason of your failure to deliver the full balance of about forty thousand Mexican silver dollars after our demand upon you to carry out your contract, we have this day purchased 20,000 Mexican silver dollars, at 46⅝, making our damage to date $325.00.    Please let us know whether you will remit your check for that amount, in which case we will send you the $450.00 still due you on your error of yesterday; or do you wish us to deduct our damage from that amount, and send you the balance? Whichever way you suggest will be satisfactory to us.    Your early reply will greatly oblige yours truly,    Silberman & Joseph."

The defendants declined to either send their check, or sanction the deduction of the amount claimed to have been lost by plaintiffs by reason of the alleged breach of contract from the amount owing by plaintiffs to defendants for the 1,000 Mexican silver dollars delivered

in excess by the defendants, as above stated. Thereafter the defendants brought their action in the supreme court, which is still pending, to recover back the value of the said Mexican dollars, and the plaintiffs brought this action to recover for their losses by reason of the breach of contract above set forth.

With regard to the defense of the statute of frauds, interposed herein, we think that the delivery of the 18,315 Mexican dollars on October 19th, the acceptance thereof, and the payment therefor, were effectual to obviate the operation of the statute, and that that defense is without merit. See Mackie v. Egan, 6 Misc. Rep. 96, 26 N. Y. Supp. 13; Van Woert v. Railroad Co., 67 N. Y. 538.

The evidence bearing upon the nature of the original contract is conflicting. The documentary proof tends to support the plaintiffs' contention. We should not, however, be disposed to interfere with the decision of the trial justice in defendants' favor, were it not for some errors of law in the rulings upon the admissibility of testimony, which seem to be of sufficient importance to call for a reversal of the judgment.

The defendants introduced much evidence with the object of showing that, even assuming the plaintiffs' version of the original contract to be correct, still that contract was afterwards, on the afternoon of October 18th, changed by reason of a conversation between the defendant Julio J. Julia and William Brill, a clerk of the plaintiffs, and that the final contract was settled and agreed upon between said Julia and said Brill, and that said Brill at that interview altered the alleged original contract by reducing the amount of Mexican silver dollars to be delivered from about 40,000 to about 20,000; and it is claimed, as a logical sequence, that the delivery of about 20,000 Mexican silver dollars on October 19th was in full of said new contract. There is a sharp dispute between Julio J. Julia and Brill as to what was said at that interview, but in any event it was very proper for the plaintiffs to show that whatever arrangement Brill may have made, which altered the alleged original contract, he had no authority to make the arrangement claimed to have been made by defendants, and that he was not acting as plaintiffs' agent in so doing. Brill is asked as follows:

"Q. Did you have any power or authority to change that contract? A. No, sir. (Stricken out on motion of defendants. Plaintiffs' counsel excepts.) Q. Had you been authorized to change the contract in any way by the plaintiffs, Silberman & Joseph? (Objected to. Sustained. Exception by plaintiff.)

These rulings were erroneous. The agent is a competent witness to prove his own authority, if it be by parol. 1 Greenl. Ev. § 416. It is not pretended that Brill had any written authority. In the case of Jennings v. Davies, 29 App. Div. 227, 51 N. Y. Supp. 437, the following question was put: "Q. Did you have authority from your wife to execute this paper?" The question was objected to, and excluded, as involving a conclusion. It was held by the appellate division of this department (Van Brunt, P. J.) that the question asked, not for a conclusion, but for a fact, and should have been allowed. It is well settled that the powers of a special agent, as was

Brill in the case at bar, are limited by the terms in which they are conferred, and must be strictly pursued, and a principal is not bound by his acts, beyond the limit of the authority delegated. Martin v. Farnsworth, 49 N. Y. 555. The evidence fairly shows that defendants had sufficient knowledge of the relationship existing between Brill and the plaintiffs to put them upon inquiry as to the extent of the authority conferred by plaintiffs upon Brill to act as their agent. It is a well-established rule that third parties, dealing with an avowed agent, and more particularly a special agent, are put upon their guard by the very fact, and do so at their own risk. They cannot rely upon the agent's assumption of authority, but are to be regarded as dealing with the power before them, and must, at their peril, observe that the act done by the agent is legally identical with the act authorized by the power. 1 Am. & Eng. Enc. Law (2d Ed.) p. 987; also, Michael v. Eley, 61 Hun, 180, 15 N. Y. Supp. 890; Nestor v. Craig, 69 Hun, 543, 23 N. Y. Supp. 948. The defendant swears that Brill went to the telephone, and conferred, as he (defendant) supposed, with the plaintiffs, and then said, "That will be all right," and agreed to the terms of defendants. This is not sufficient to warrant the defendants in relying upon the agent's assumption of authority, even if we hold that Brill did assume the authority which the defendants claim he did, and that he did agree to the terms which defendants assert he agreed to.

We are of opinion that the judgment should be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.