## BOWERS v. MISSOURI STATE LIFE INS. CO.

No. 7944—Opinion Filed Nov. 20, 1917.

Rehearing Denied Jan. 8, 1918.

(169 Pac. 631.)

1. **Insurance—Agency Contract—Action—Evidence.**

In an action to recover damages for the wrongful breach of a contract of employment by a life insurance company of the plaintiff, as manager to solicit individually and through agents appointed by him life insurance for said company, which contract provided that, if the plaintiff should fail during any month to tender to the company accepted and paid-for applications for insurance to the amount of $12,000, the contract might at the option of the company become null and void and cease and determine, evidence examined, and held, to be insufficient to show any breach of the contract upon the part of the defendant insurance company, or any actionable wrong upon the part of said defendant insurance company in exercising its option to abrogate said contract.

2. **Contracts — Insurance — Agency — Contracts—Modification.**

The payment by one member of a partnership, acting as managers for a life insurance company of a shortage due said life insurance company, incurred through the fault

of another partner, is not a consideration to support an agreement on the part of said life insurance company to modify an existing written contract.

(Syllabus by Rummons, C.)

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by M. M. Bowers against the Missouri State Life Insurance Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Jno. E. Du Mars, Chas. West, and Stuart, Cruce & Cruce, for plaintiff in error.

Keaton, Wells & Johnston, for defendant in error.

Opinion by RUMMONS, C. This action was commenced by the plaintiff in error, hereinafter styled the plaintiff, against the defendant in error, hereinafter styled the defendant, on April 23, 1914, to recover damages for the wrongful breach of a contract of employment by the defendant of the plaintiff as a general agent to solicit life insurance for the defendant. Plaintiff alleges that on April 6, 1901, a contract was entered into between the Hartford Life Insurance Company of Hartford, Conn., and E. B. Maust and Eugene P. Guthrie, under the firm name of Maust & Guthrie, by the terms of which Maust and Guthrie were appointed the managers of the Hartford Life Insurance Company for the western half of the state of Arkansas to solicit, individually and through agents appointed by them, life insurance for said company; that the interest of Maust in said contract was duly assigned and transferred with the consent of said company to one Frank Hill; that on the 1st day of April, 1903, a contract was entered into by and between the Hartford Life Insurance Company aforesaid, and Frank Hill and E. P. Guthrie, doing business under the firm name of Hill & Guthrie, by the terms of which said Hill and Guthrie were employed as managers to solicit life insurance for said company in the Indian Territory; that Hill transferred and assigned, with the consent of said company, all his interest in both of said contracts to Guthrie; that afterwards Guthrie, with the consent of said company, assigned and transferred both of said contracts to Harley E. Thompson and the plaintiff under the firm name of Thompson & Bowers. This last assignment was made on September 14, 1909. On August 27, 1910, Thompson assigned his interest in the two contracts to the plaintiff. The petition further alleges that in 1913 the defendant and the Hartford Life Insurance Company were consolidated and the de-

fendant took over all of the business of the Hartford Life Insurance Company and assumed all contracts, obligations, and liabilities of said company. It is further alleged that in the year 1912 the Hartford Life Insurance Company withdrew from his territory the west half of the state of Arkansas and the counties of Washington, Craig, Ottawa, Rogers, Mayes, Delaware, Adair, and Cherokee. The plaintiff further alleges that on the 23d day of March, 1913, the defendant without cause canceled his contracts and discharged him from its service. He further alleges damages by reason of loss of renewal premiums and loss of his business aggregating the sum of $66,000.

The defendant answered by general denial, admitting that on February 17, 1913, it purchased the legal reserve life insurance business of the Hartford Life Insurance Company in the United States of America and elsewhere, admitted the execution of the contracts set out in plaintiff's petition, admitted that plaintiff acted as agent for the Hartford Life Insurance Company until said business was taken over by the defendant; admitted that he acted as agent of the defendant in the state of Oklahoma from the time the Hartford Life Insurance business was purchased by the defendant until the 23d day of March, 1914, at which time the contract was terminated for the reason that he had not produced the minimum amount of business provided for in said contract, and that plaintiff had wrongfully and negligently failed to diligently and efficiently look after the business of the defendant; and alleges that the defendant had no knowledge at or prior to the time it purchased the business of the Hartford Life Insurance Company of any complaint or grievance on the part of the plaintiff because of his having been wrongfully deprived of any territory, agencies, or subagencies which he claimed under the provisions of said two contracts. The plaintiff replied, and on the trial at the close of plaintiff's evidence the court sustained the demurrer of the defendant to plaintiff's evidence, and rendered judgment for the defendant.

The plaintiff complains of the action of the trial court in sustaining the demurrer to his evidence for several reasons: First, it is contended that the evidence of plaintiff shows that plaintiff had complied with the terms of his contract, or if there was any failure to comply therewith, such failure has been acquiesced in and waived by the defendant. Second, that the evidence showed that if plaintiff had in fact failed to comply with the terms of his contract, it was because the defendant and the Hartford

Life Insurance Company had wrongfully deprived him of valuable parts of his territory. Third, it is further contended that even if plaintiff was rightfully discharged, and the contract rightfully terminated, that he was still entitled to recover the value of his renewal commissions because of a subsequent oral agreement between plaintiff and defendant, at the time the plaintiff took over the interest of his partner Thompson, that in the event of the cancellation of his contract, plaintiff would be entitled to his renewal commissions during the life of policies upon which such commissions were earned.

In the contract of April 6, 1901, it is provided as follows:

"It is further understood and agreed that if the party of the second part shall fail during any month to tender to the company accepted and paid-for applications for insurance to the amount of $21,000, the contract may at the option of the company become null and void and cease and determine. The territory aforesaid shall not be exclusive, but shall be open territory, in which the company may appoint other agents, and any business secured by any agent so appointed shall not be subject to the terms of the contract."

It was further provided in said contract as follows:

"The company further agrees to allow to the party of the second part as remuneration hereunder commissions and renewals in accordance with the following schedule, which shall accrue only as premiums are paid over to the company, and said remuneration shall continue during the existence of this contract, and no longer."

Then followed a schedule of commissions upon initial premiums and renewal premiums. The contract of April 1, 1903, covering the Indian Territory, contained the same provisions, except that in the latter contract the minimum amount of insurance to be tendered by the plaintiff was fixed at $12,000 a month.

The trial court found in sustaining the demurrer to the evidence that the plaintiff had failed to comply with this provision of the contract of 1903 during the months of September, October, November, December, January, and February, 1913 and 1914, and that the defendant by reason of such failure of the plaintiff could rightfully terminate the contract in March, 1914.

The plaintiff's evidence shows that in September, 1913, he tendered to the defendant applications for policies which were accepted by the company and paid for by the insured in the sum of $8,500; that in October, 1913, he tendered applications that were accepted and paid for in the sum of $10,500; that in November, 1913, he tendered applications which were accepted and paid for in the sum of $10,000; that in December, 1913, he tendered applications which were accepted and paid for in the sum of $2,000. In January, 1914, the plaintiff produced $3,500 of accepted and paid-for applications. Plaintiff testified that in February, 1914, he tendered applications in the sum of $17,500. He was unable to state with accuracy the amount of insurance so tendered in February which was accepted by the company and paid for by the insured, except the sum of $3,500. It is, however, contended on behalf of plaintiff that although the plaintiff had failed during the months of September, October, November, December, and January to tender the minimum amount of applications, yet as the defendant had not availed itself of its option to cancel the contract because of such failure, but had continued to do business with the plaintiff as its agent, and that as plaintiff had tendered in February applications for insurance in excess of the minimum, the defendant had no right to cancel this contract in March. In support of this contention the plaintiff urges that the evidence shows that the contract provided that the plaintiff should have 60 days from the acceptance of an application by the defendant in which to deliver the policy and collect the initial premium, and that the canceling of the contract by the plaintiff and the discharge of the defendant in March prevented plaintiff from collecting the premiums upon the applications tendered. It is urged that if he had been continued in his agency he could have collected the premiums upon all the applications tendered, and therefore that he was not in default of his contract at the time of his discharge.

The evidence of the plaintiff seems to show that during each of the months heretofore mentioned he offered to the company applications of insurance in excess of the minimum required, but of the applications so offered the amount accepted and paid for invariably fell below the minimum required. From a careful examination of the entire record it seems that in the course of business of plaintiff and defendant under this contract in many instances policies applied for and issued were not paid for until 60 days after the issuance thereof. Plaintiff in his testimony in chief fixed the business of each of the months referred to at a sum considerably in excess of that actually paid for. It appears upon his cross-examination, however, that he based his estimate of the amount tendered each month not upon the

applications tendered, but upon the policies paid for during that month, some of which had been written several months before.

If the contention of the plaintiff be true, then the defendant could never have terminated the contract, no matter how small the amount of accepted and paid-up business plaintiff might have produced so long as plaintiff produced applications for insurance, whether bona fide or not, in excess of the minimum during any one month. For upon the theory of plaintiff the defendant would be required to wait the 60-day period allowed for a settlement of premiums before it could say that the defendant had forfeited his contract, and at the end of the 60-day period it could not say that plaintiff had forfeited his contract because of his failure to produce the required amount of business, because by its failure to terminate the contract at the end of the months complained of it would, if the plaintiff's contentions be true, have waived its right to exercise its option. We think the trial court was right in its conclusion that plaintiff had failed to prove that he had complied with the terms of his contract. It was incumbent upon the plaintiff to prove that he had tendered to the company applications for policies, which applications were accepted and the policies paid for to the amount of the minimum. It was not sufficient for him to prove that he had merely tendered applications for policies to the minimum amount.

As to the contention of plaintiff that he could not rightfully be discharged by the defendant because his territory was wrongfully taken away from him, and thereby he was hindered in producing the required amount of insurance, it appears that the Arkansas territory was taken away from him in 1911, about 2 years before the defendant purchased the business of the Hartford Life Insurance Company. The plaintiff offered no evidence to prove performance of the contract upon his part as to the Arkansas territory. It will be remembered that the Arkansas territory was covered by an independent contract, and also as the record discloses the first serious complaint of the taking away of the Arkansas territory arises in this action. The several counties in Oklahoma were taken from the plaintiff also in the year of 1911 by the Hartford Life Insurance Company. There is no evidence in the record, nor was there any offered to show the terms upon which the defendant took the business of the Hartford Life Insurance Company, or that it assumed any liabilities of said Hartford Life Insurance Company. The record shows that on the coming of statehood the entire state of

Oklahoma was included in the Indian Territory contract by mutual agreement apparently, and that at the time the defendant took over the business of the Hartford Life Insurance Company the counties heretofore named in Oklahoma had been excluded from plaintiff's territory for some time, but that plaintiff and defendant continued to do business under the contract of 1903 in the remainder of the state of Oklahoma without any complaint or objection by plaintiff of being deprived of this territory. We are therefore of the opinion that the plaintiff offered no evidence to charge the defendant with any wrong excusing plaintiff's breach of his contract.

Plaintiff contends that even though he might rightfully be discharged as the agent of defendant, yet that he is still entitled to recover his renewal commissions for the reason that at the time he took over the interest of his partner in this agency, it was agreed between the auditor of the Hartford Life Insurance Company and plaintiff that, if he paid the sum of $2,350 to the company, all his renewal commissions would belong to him, even though the contract be terminated. It will be remembered that the contract provided that the commissions provided for therein should terminate with the contract. Plaintiff says that this constituted a modification of his contract, and that by the terms of the modification of his contract he is still entitled to his renewal commissions, even though the contract be ended. Some evidence of the transaction between plaintiff and the auditor of the Hartford Life Insurance Company is in the record. Other evidence was offered, but excluded by the court, to which plaintiff excepted. As we gather from the record and briefs the firm of Thompson & Bowers was short in their account with the Hartford Life Insurance Company in the sum of $2,350. The auditor was sent to adjust the account. It was discovered that the shortage was the fault of Thompson. It is shown that the plaintiff Bowers paid this shortage and took over Thompson's interest in the contract, and Thompson retired from the firm. Plaintiff offered to prove that it was agreed by the auditor that if the plaintiff paid this shortage his renewal commissions should belong to him during the life of the policies upon which they were earned, even though his contract with the insurance company might thereafter be terminated. The court excluded the testimony so offered. Plaintiff contends the court committed error in so excluding this testimony, for the reason that they were entitled to show that the original contract had been modified by a

subsequent executed parol agreement. This would be true if the subsequent parol agreement was based upon a consideration. It is contended that the agreement was executed ·by the plaintiff's paying to the Hartford Life Insurance Company a sum of money. The record, however, shows that the money so paid was due from the firm of Thompson & Bowers to the Hartford Life Insurance Company. While the shortage may have been the fault of Thompson, yet the liability was the plaintiff's as well as Thompson's. In paying this money to the life insurance company the plaintiff was merely discharging a liability which he had theretofore incurred, and it constitutes no consideration for the agreement sought to be proved.

Section 926, Rev. Laws 1910, provides:

"Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

Under the provisions of this section the money paid by plaintiff to the life insurance company to discharge a debt of the firm of which he was a member was clearly no consideration for the promise of the auditor. We need not here discuss the authority of the auditor to enter into the contract sought to be shown, but the trial court was clearly right in excluding the proffered testimony.

There being nothing in the record showing any actionable wrong committed by the defendant or any breach of contract upon its part, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.