## HOME OWNERS' LOAN CORPORATION v. THORNBURGH et al.

No. 29417.   Oct. 15, 1940.

*106 P. 2d 511.*

A. M. Frazier, of Dallas, Tex., O. K. Wetzel and Hardin Ballard, both of Oklahoma City, and John Caruthers, of Okmulgee, for plaintiff in error.

Robt. R. Smith, of Okmulgee, for defendants in error.

NEFF, J. The defendants executed their note and mortgage to the plaintiff Home Owners' Loan Corporation. After continued delinquency the plaintiff obtained a judgment against them on the note and foreclosing the mortgage. Pursuant to the judgment the mortgaged property was sold at sheriff's sale and was purchased thereat by plaintiff for a sum less than the money judgment, leaving a deficiency judgment to the extent of the difference. The sale was confirmed, and that portion of the proceeding is behind us and not involved herein.

Subsequently plaintiff caused an alias execution to be issued on its deficiency judgment and levied against other property of defendants. Defendants filed a motion to recall the alias execution and a hearing was had on that motion. The trial court sustained the motion on the ground that the judgment had been satisfied and settled, and the plaintiff appeals.

The trial court's conclusion that the judgment had been fully satisfied is based upon an alleged oral agreement between one of the defendants and a field agent of the plaintiff, arising out of a sidewalk conversation had between them after the sale had been confirmed, and relating to the deficiency judgment. The trial court was of the belief that because of this conversation the Home Owners' Loan Corporation became obligated to release the deficiency, in consideration of the defendant's promise to give immediate possession of the premises and the further promise of defendant to forbear appealing from an order of the United States District Court denying his petition to be declared a bankrupt.

It is first contended that there is no showing of a sufficient consideration for the alleged promise of plaintiff's field agent. The plaintiff points out that the defendants were legally obligated to surrender possession of the foreclosed property anyway, since the sheriff's sale had been confirmed and was in all respects regular, and that the performance or promise of performance of a duty imposed by law or of a duty which one is already legally bound to do, forbear, or suffer, is not a sufficient consideration to support a contract, citing Bowers v. Missouri State Life Ins. Co., 69 Okla. 14, 169 P. 633; Maker v. Taft, 41 Okla. 663, 139 P. 970, 52 L.R.A. (N.S.) 328; 6 R.C.L. 664; 34 C. J. 701. That principle is too well settled to justify extended discussion, and it would obviously be applicable to that part of defendant's promise to surrender possession of the foreclosed premises.

But would it be applicable to the remainder of defendant's promise, to forbear pursuing his remedy of appeal in the bankruptcy matter, under the Frazier-Lemke Act, which it is said would have deferred plaintiff's obtaining possession of the premises? Although plaintiff in its brief includes the formal statement of a proposition related to this question, said proposition is not argued by plaintiff or supported either by authorities or original reasoning. On the other hand, defendant cites authorities holding that the forbearance of the right of appeal is a sufficient promise to constitute consideration for a contract.

If, however, the Home Owners' Loan Corporation was not bound by the statement of the field agent that the

deficiency would be released, it is immaterial whether defendant's promise to forbear appeal was or was not a good consideration. We therefore move our inquiry into the law of agency, intermixing discussion of the law and the facts in order to clarify the solution.

The authority of an agent legally to bind his principal in a contract with a third person is, in broad terms, either actual or apparent. Actual authority includes both express and implied authority. But apparent authority may come either within or in excess of actual authority. If liability of the principal is predicated upon apparent authority in excess of actual authority, the principles of estoppel necessarily come into play, and those principles in turn bring into importance the knowledge or duty of the person who invokes them, namely, the third person who is relying thereon.

In the instant case the field agent did not have actual authority to release the deficiency judgment. That is undisputed. The loans, mortgages, judgments, etc., of the Home Owners' Loan Corporation are assets for the cancellation of its bonds which in turn are guaranteed by the United States Treasury. In order to protect those assets from dissipation by irresponsible and unwarranted statements or promises by employees in its various departments, including its thousands of field agents, the corporation had adopted and published a manual which limited and particularized the powers of its agents and employees. Federal Register, March 4, 1937, page 496, of which courts take judicial notice. 49 Stat. 500, 503, section 7. Section 605 thereof prescribed that regional managers, with the approval of regional counsel, subject to procedure and limitations prescribed by the general manager with the approval of general counsel, could exercise the authority of compromising or settling deficiency judgments, and that officials of the corporation in the field were authorized to take said action "as is herein provided, as designated by the general manager, with the approval of the general counsel and under procedure prescribed by them." As stated above, the absence of actual authority by the field agent to release the judgment is established by undisputed evidence, and same appears to be conceded by defendants.

Such absence of actual authority, therefore, relegates analysis of the case to the remaining form of authority, namely, apparent authority. But at this point we are met by the frank admission of the defendant that he knew, when he talked with the field agent, that the latter did not have authority to release the judgment. Apparent authority loses all of its apparency when the third party knows that actual authority is lacking. As stated in 2 C.J.S. 1188, 1189, citing many cases as authority:

"Insofar as a third person has notice or knowledge at the time of dealing with an agent of the inconsistency between the powers which the agent has and those which he assumes to exercise, the authority of the agent is deemed not to extend beyond that actually conferred upon him, to the exclusion of whatever apparent authority might exist in the absence of such notice or knowledge. * * *

"Any apparent authority that might otherwise exist vanishes in the presence of the third person's knowledge, actual or constructive, of what the agent is, and what he is not, empowered to do for his principal; and, regardless of the third person's ignorance of this rule of law, no resort can be had to that doctrine, for the underlying principle on which the doctrine of apparent authority is based, that where one of two innocent parties must suffer, that one must bear the burden who placed another in a position to cause a loss, has no room to operate in behalf of one who is apprised as to an agent's authority. * * *

"The third person need not know or be charged with notice of the precise limits and extent of the agent's authority or of the exact tenor of the qualifying instructions; whenever, under all the facts or circumstances, such third person knows, or has good reason for knowing or believing, that an act undertaken by the agent or a matter with which he assumes to deal is in ex-

cess of the authority conferred, such an act or matter falls altogether beyond his authority of whatsoever character or kind as to the third person.

"The very statement of the rule makes it clear that precise and explicit knowledge of the matters referred to is not essential to the limitation of the agent's authority on the ground here under consideration; any notice of matters, bearing upon this question of authority, which a prudent man is bound to regard, is deemed the equivalent of knowledge, the third person being chargeable with knowledge of such facts as a proper inquiry as to the agent's powers would have revealed to him. The duty of discovering the real limits of the authority is imposed upon a third person who is aware that definite limits do exist."

In 2 Am. Jur. 80 it is said:

"It is always competent for a principal to limit the authority of his agent, and if such limitations have been brought to the attention of the party with whom the agent is dealing, the power to bind the principal is defined thereby. Accordingly, the general rule is that one who deals with an agent, knowing that he is clothed with a circumscribed authority and that his act transcends his powers, cannot hold his principal; this is true whether the agent is a general or a special one, for a principal may limit the authority of one as well as the other."

The foregoing rule was approved by this court in Cargile v. Union State Bank, 40 Okla. 506, 139 P. 701, as stated in the first syllabus:

"Limitations which are known to a person dealing with an agent are as binding upon such person as they are upon the agent, and he can acquire no rights against the principal by dealing with such agent contrary thereto."

That one contracting with an agent with knowledge of limitations of the agent's authority acts at his own peril as to acts of the agent in excess of his actual authority, is further announced in the following recent decisions: Hartford Fire Ins. Co. v. McAvoy, 177 Okla. 60, 57 P. 2d 242; Federal Deposit Ins. Corp. v. Grim, 184 Okla. 275, 86 P. 2d 774; American Nat. Bank of Sapulpa v. Bartlett (C.C.A. Okla.) 40 Fed. 2d 21; Gannaway v. Standard Accident Ins. Co., etc. (C.C.A. Okla.) 85 Fed. 2d 144; Truscon Steel Co. v. Cooke (C.C.A. Okla.) 98 Fed. 2d 905. Since the defendant knew that the field agent did not have authority to bind the Home Owners' Loan Corporation to release the judgment, and so admitted, he could not have been misled as to any apparent authority of the agent in that respect, and the principal was not bound.

We have not ignored defendant's testimony that the agent told him that he, the agent, had telephoned the regional office and that the authorities there had told him, the agent, that the plan was satisfactory, or words to that effect. The undisputed testimony is that no request for a release was ever submitted to the regional office, and no approval was ever had from that office. Therefore we have this situation: (a) The agent does not have the authority to agree to release the judgment for his principal; (b) the third party knows of such lack of authority; (c) the agent tells the third party that the principal, nevertheless, has empowered him to make the agreement in the particular case; (d) no such empowering had in fact occurred. Is the principal bound? By such authorities as we have been able to find, and by the operation of familiar principles of agency, we are guided to answer that question in the negative, although an argument to the contrary could be made.

The defendant could make no agreement with the plaintiff, under the circumstances, except through the medium of the plaintiff's agent, who is the only one with whom he talked. Therefore, if the principal is bound, it is bound through an act of its agent. We have already ruled out the existence of apparent authority, due to defendant's knowledge that the agent did not have actual authority. If we should now replace that apparent authority by the mere statement of the agent (now known to have been false) that he had been given the power, we would run contrary to the well-established rule announced in many of our decisions, including McDonald v. Strawn, 78 Okla. 271, 190 P. 558, that the en-

largement of an alleged agent's authority cannot be established by declarations of the agent made out of court. Agency cannot be proved by the declarations of the reputed agent. Whitcomb v. Oller, 41 Okla. 331, 137 P. 709; Schaff v. Coyle, 121 Okla. 228, 249 P. 947. And the same prohibition applies to proof of the extent of the authority as applies to proof of agency itself. McDonald v. Strawn, supra; Mabee v. McWaters, 151 Okla. 10, 1 P. 2d 636.

A further thought on the question is this: When an agent by express words represents to a third person that the principal has consented and has therefore given his authority to close the deal, he is saying no more than what he would imply or infer anyway by the mere offer to transact for his principal, unaccompanied by said words, for of course an offer or an agreement by one representing himself to be an agent includes his accompanying representation of authority. Else he would not hold himself out as agent.

In Joseph v. Struller, 25 Misc. 173, 54 N.Y.S. 162, the facts in legal significance were the same as here. An agent whose authority to act was restricted within limited and circumscribed powers, as here, and who was therefore a special agent (Story on Agency, sec. 17: 1 Amer. & Eng. Enc. Law 985; Great American Casualty Co. v. Eichelberger [Tex.] 37 S.W. 2d 1050), was negotiating on behalf of his principal concerning the purchase of certain Mexican dollars. The third persons knew of the limitations of his authority. In contemplation of an exercise of excess authority he went to the telephone, in their presence, and talked, then hung up the receiver and turned about and said that the proposition was all right, or accepted. The court held that since the third persons already knew of the limitations of the agent, the actual representations of the agent alone, unaided by other circumstances, were insufficient to bind the principal. The court said in the fifth syllabus:

"One who deals with a person known to be a special agent cannot rely on the agent's claim of authority to act in a transaction merely because he went to the telephone, and conferred, as defendant supposed, with his principal in regard to closing the transaction, and then agreed to the terms of the contract."

2 C.J.S. 1197 and 1198, citing many cases as authority, summarizes the standard of care required of a person who has been put on notice of the limitations of an agent's authority. Speaking on the subject of persons from whom the third party should derive the true information, it is said therein:

"The inquiry, in order to discharge the duty and relieve the third person from the consequences of a failure to fulfill it, should be made and the extent and character of the authority ascertained, from the principal or some other person interested, in the principal's behalf, in the disclosure of the truth with reference to the matter; mere inquiry of the agent or assurances by him will not avail, for the agent's statements or conduct show only the latter's assumption of authority, which does not excuse the third person from seeking information from proper sources, any more than does his presuming an authority in the agent to deal in a particular manner or as to particular matters. In order to be entitled to the protection afforded by his satisfying the requirement of inquiry, he must trace the authority to its source, or must, failing that, know of acts or declarations of the principal demonstrative of the authority."

We see no essential difference between this case and the situation existing in Hartford Fire Ins. Co. v. McAvoy, 177 Okla. 60, 57 P. 2d 242, where an insurance agent advised persons seeking a fire insurance policy that he could not write such a policy but would telephone the insurer, and then did telephone the insurer, in which case it was held that the third parties could not rely upon his representations as to what additional authority had been given him.

According to proper analysis of the case, as we see it, and in line with what appears to be the prevailing rule, we see no alternative but to reverse this judgment and direct that judgment be entered for the plaintiff. Accordingly, it is so ordered.

BAYLESS, C. J., and RILEY, HURST, and DAVISON, JJ., concur.