MID–CONTINENT PETROLEUM CORP.

v.

WILHOIT.

No. 35836.

Supreme Court of Oklahoma.

April 27, 1954.

Rehearing Denied May 11, 1954.

Application for Leave to File Second Petition for Rehearing Denied May 25, 1954.

R. H. Wills, J. H. Crocker, J. P. Greve, J. H. Woodard, Walter B. Hall, Rex Short, Ben Hatcher, Tulsa, for plaintiff in error.

Clarence McElroy, Owen Vaughn, Chickasha (Melton, McElroy & Vaughn, Chickasha, of counsel), for defendant in error.

O'NEAL, Justice.

Our reference to the parties will be plaintiff and defendant, being their designations in the lower court.

Plaintiff sued to recover the sum of $174.30 upon his first cause of action, and the sum of $161.42 upon his second cause of action. He alleged that as defendant's agent he operated a Bulk Sales Station in Chickasha, Oklahoma; that he operated under a bulk station contract which authorized him to extend limited credit to his customers; that on two separate dates he sold and delivered to John Simco at Lindsay, Oklahoma, two cargoes of petroleum products and received in payment therefor two checks, payable to defendant, the first check dated October 2, 1948 in the sum of $174.30, and the second check dated October 12, 1948, in the sum of $161.42; that these checks were not paid by reason of insufficient funds to the credit of Simco in the Lindsay Oklahoma Bank on which the checks were drawn; that at a subsequent date plaintiff collected the amount due on the Simco account, which included the amount represented by said checks; that defendant's agent, King, advised plaintiff to deposit said amount to the credit of defendant in its depository bank at Chickasha, Oklahoma, and that defendant's Tulsa office would reimburse plaintiff for the face value of the checks. Plaintiff made the deposit as suggested by King, but defendant failed and refused to credit plaintiff's account for the amount so deposited. Plaintiff seeks a judgment for the face value of the two checks, with interest.

Defendant by answer admitted that plaintiff operated under the bulk station contract pleaded by plaintiff, but denied plaintiff's relationship as an employee, and averred plaintiff operated as an independent contractor. Defendant admits the two deliveries of its petroleum products by plaintiff to Simco, and the execution of the two checks which, under the contract, plaintiff was obligated to deposit in the defendant's depository bank at Chickasha, Oklahoma to defendant's credit. Defendant admits the checks failed to clear the Lindsay Bank upon which they were drawn; that under the contract the defendant's depository bank at Chickasha should have sent the checks with draft attached to defendant's bank at Tulsa, Oklahoma, where defendant would have covered said draft and the Chickasha Bank would have received cash for the checks, and the defendant would have charged the amount thereof to the account of Simco, and that he would be so advised; that the Chickasha Bank did not follow said instructions but wrongfully received cash from plaintiff in the amount of said checks and delivered the checks to plaintiff; that defendant was not informed by the Chickasha Bank, nor the plaintiff of the manner in which the plaintiff handled the transaction, and, therefore, defendant billed Simco in an amount less than the face value of said checks.

Several months later Simco sold his gasoline station at Lindsay to Simmons. Simco, in compliance with the Bulk Sales Law, furnished Simmons with a statement reflecting the amount of Simco's indebtedness to defendant. Defendant had furnished Simco its statement in a like amount, which statement did not reflect the checks here involved, for the reason defendant had no knowledge that said checks were given in payment of its petroleum products to Simco, or that the checks were handled in the manner as testified by plaintiff; and that by reason of Simco's insolvency, defendant was unable to collect the amount due it from Simco; that the account of Simco was a limited account on a load to load basis and the last load had to be paid for before the next load could be delivered, and that the plaintiff exceeded defendant's credit authorization to Simco in making the deliveries of defendant's petroleum products

for which the checks were executed, and that the checks were therefore subject to be surcharged against plaintiff's account; that the defendant's employee, King, was without authority to vary or alter defendant's accounting procedure or its instructions to its depository bank at Chickasha, and denies King did so, or that King advised the plaintiff that if the cash collected by plaintiff from Simco was deposited in defendant's depository bank that defendant would reimburse plaintiff for the amount of said checks.

The record presents two questions for our decision: First, does the evidence disclose that the two deliveries of defendant's petroleum products, made by plaintiff to Simco, exceeded his credit allowances under the bulk station contract, and that therefore the two checks given by Simco when returned for non-payment were properly charged against plaintiff's account with defendant, and, second, does the evidence support a finding that a departure from the manner and methods of making the deliveries of defendant's petroleum products by plaintiff to Simco, in excess of Simco's credit allowance, and the handling of the proceeds of the collection made by plaintiff from Simmons, was authorized by defendant's agent, Ralph King, within the scope of his authority to act in behalf of the defendant.

█ Plaintiff produced evidence tending to establish that commencing in the year 1947, he operated a bulk sales station at Chickasha, under contract with the defendant, the Mid-Continent Petroleum Corporation. Under the contract he was authorized to extend credit to John Simco, a gasoline dealer at Lindsay, Oklahoma on a load to load basis on gasoline and other petroleum products. Under this arrangement when he delivered a load of gasoline he was required to collect any amount then due covering a previous delivery. On the 2nd day of October, 1948, Simco gave his check for $174.30 in payment of gasoline theretofore delivered, and on the 12th day of October, 1948, he gave his second check for $161.42 covering a previous delivery. In due course, plaintiff deposited the checks in the Chickasha Bank, defendant's de-

pository, for collection. The Simco checks drawn on a Lindsay Oklahoma Bank were not paid for the want of sufficient funds, and thereafter, the Chickasha Bank so advised plaintiff, whereupon, plaintiff picked up the checks by payment and the two checks were delivered to him.

Plaintiff and King, defendant's territory manager in defendant's sales department, called on Simco on three or four occasions in an effort to collect the indebtedness evidenced by the checks. Several months later Simco sold his gasoline station at Lindsay to Simmons. In that transaction Simmons presumably retained a sum sufficient to take up the checks. After Simmons paid plaintiff the amount of Simco's indebtedness to defendant, which presumably included the amount of said checks, plaintiff deposited the funds in the Oklahoma National Bank at Chickasha, Oklahoma, and so advised Ralph King, defendant's territory manager at Chickasha. When King learned that the proceeds of the checks had been deposited by plaintiff to his individual account, he made objections to the handling of the account in that manner and advised plaintiff that he would consult Mr. Threlkeld, defendant's Division Auditor, at defendant's home office in Tulsa, as to how the matter should be handled. After King phoned Threlkeld, King advised plaintiff to deposit the money with defendant's depository bank and that if he did so the Tulsa office would send its draft to plaintiff to cover the check transaction.

The following day, at King's suggestion, he and plaintiff contacted Simmons at Lindsay for the purpose of satisfying King that Simmons had possession of the two checks. Upon their return to Chickasha, plaintiff withdrew the funds from his personal bank and redeposited the funds to the defendant's credit in defendant's depository bank. Several days thereafter defendant's representative at Tulsa, advised plaintiff by letter that the checks were his and that defendant would not send plaintiff a draft covering the same.

The record here discloses that in defendant's first amended answer and cross-petition, the defendant's depository bank, The First National Bank of Chickasha, was

made a party defendant. It was alleged that defendant's depository bank and plaintiff had received written instructions from the defendant with reference to handling plaintiff's accounts for deposit. The proof disclosed that plaintiff was instructed orally, by defendant, to make collections and deposit same in defendant's depository bank, but that he had no authority to take up "hot checks" either out of defendant's cash or by payment from his individual funds.

To defeat plaintiff's recovery, defendant contends that plaintiff's evidence did not make out a case against defendant's demurrer thereto, and was insufficient as against defendant's motion for a directed verdict. These contentions are variously stated under seven propositions in defendant's brief.

Defendant's evidence tends to establish that under the bulk station contract plaintiff was authorized to sell defendant's petroleum products only for cash, unless otherwise authorized in writing by defendant. The account of Simco was approved by defendant on a load to load basis. Defendant was authorized to deduct from plaintiff's commissions, any amounts sufficient to cover merchandise purchased, cash shortages, and checks accepted in violation of defendant's authorized credit allowances to plaintiff's customers.

Under the contract defendant authorized plaintiff to extend credit to Simco in a maximum limit of $200 on a load to load basis; under one exception plaintiff was authorized by defendant, in writing, to extend two special oil credits to Simco on a 30–60–90 basis. At the time said special credit allowance was granted to Simco, plaintiff had already exceeded his credit authorization, which fact was unknown to defendant.

Under defendant's instructions to its depository bank, all checks drawn by plaintiff's customers if returned because of insufficient funds were not to be returned to plaintiff, either for cash or for collection, nor charged back to the customer's account, but were to be handled by drawing a sight draft on defendant, with checks attached, through defendant's Tulsa Bank, which sight draft defendant guaranteed to pay.

Defendant's evidence supports the conclusion that its instructions to its depository bank were in a general way known by plaintiff, and that if the transaction here involved had been followed as authorized by defendant, the defendant would have charged the amount of the checks back to Simco, and returned the checks to plaintiff for collection, and if thereafter collected the item would have been reported in plaintiff's subsequent collection report and the amount credited to Simco.

The checks dated October 2, 1948 and October 12, 1948, were retained by plaintiff until the month of February, 1949, during which period defendant's statements to Simco did not reflect the true amount due defendant as defendant did not know of the execution of the checks in question; that when Simco sold his station to Simmons, the latter advised defendant of his intended purchase, in order to comply with the Bulk Sales Law and to protect himself against outstanding bills of Simco. Defendant furnished Simco and Simmons a statement of the Simco account in the sum of $513.82, at which time defendant did not know that the amount of the checks were not included in the statement of the account; that although plaintiff knew the checks were not included in the Simco account, plaintiff collected the sum of $513.82 from Simmons, and thereupon delivered the Simco checks to Simmons. The item of $513.82 was deposited by plaintiff in his personal account in his bank at Chickasha, and was thereafter withdrawn by him and deposited in defendant's depository bank at King's request after King had contacted the defendant's Tulsa office for advice in the handling of the transaction.

Defendant's witnesses, King and Threlkeld, testified that they did not represent to plaintiff that if plaintiff would deposit said items to defendant's credit, that the defendant's Tulsa office would reimburse plaintiff the amount of the checks, nor did they have authority to make such a representation.

The evidence is without substantial dispute that plaintiff violated the written contract when he made deliveries of defendant's petroleum products to Simco on Octo-

ber 2, 1948 and October 12, 1948. He was limited to a load to load basis.

On September 24, 1948, defendant wrote plaintiff calling his attention to the fact that the Simco account was out of balance in the amount of $273.71. Replying to that letter plaintiff wrote the following: " *  * The way I analize this he owes for a part of the last load of gasoline. This customer is a load to load account."

On October 4, 1948, plaintiff wrote defendant admitting Simco's account was overdrawn. The record shows Simco's account was overdrawn as of that date in the sum of $273.71 as of the end of August, 1948, which sum exceeded defendant's credit authorization to Simco in the sum of $207.77.

With reference to the check dated October 12, 1948, in the sum of $161.42, plaintiff did not report it as a collection in his sales report to defendant. The record further discloses the following questions and answers made thereto:

"Q. Isn't what happened, Mr. Wilhoit, you deposited that John Simco check for $161.42 as part of the cash in the Mid-Continent cash drawer? A. Yes, sir.

"Q. That is right, isn't it? A. It is.

"Q. In other words you cashed that check out of the Mid-Continent cash drawer? A. Well, I used that to make up my report."

The check of October 2, 1948, in the amount of $174.30 represented gasoline delivered by plaintiff to Simco in August, 1948. The delivery made on October 2, 1948 in the amount of $165.98 was a violation of the credit authorization as Simco was then owing defendant $216.90, and plaintiff on October 2, 1948, only collected $174.30, leaving $41.79, which amount when added to the new delivery in the amount of $165.98 made a total of $207.77 in excess of plaintiff's authorized credit allowance to Simco.

The record discloses additional credit violations credited by plaintiff to Simco during the months of October and November, 1948, to the extent of $255.82.

Exhibit 128 discloses that the Simco check, dated October 12, 1948 in the sum of $161.42 was deposited in defendant's depository bank, The First National Bank of Chickasha, Oklahoma on October 13, 1948; however, plaintiff's check drawn for the sum of $161.42 on plaintiff's individual bank, The Oklahoma National Bank of Chickasha, in favor of defendant's depository bank, was deposited in defendant's depository bank for collection on October 12, 1948, one day before said bank received Simco's "hot check" dated October 12, 1948. This transaction refutes plaintiff's contention that he took up the Simco "hot check" with plaintiff's personal check. The endorsement on the hot check disclosed it did not go through the bank on which it was drawn at Lindsay, Oklahoma until October 23, 1948, and until its return to the depository bank it had no knowledge of its invalidity; therefore, the record as made by plaintiff does not support his contention that his check drawn on his personal bank for $161.42 was for the purpose of taking up the Simco hot check.

■ The remaining question for our decision is whether the evidence supports plaintiff's contention that Ralph King, defendant's territory manager, was authorized to depart from defendant's contract with plaintiff. The evidence is without dispute that in February, 1946, R. C. Speights, defendant's District Manager for Oklahoma, introduced Ralph King to plaintiff and advised plaintiff that Ralph King would direct plaintiff in matters covered by the bulk station contract.

Defendant urges with persuasive force that King's jurisdiction as its territory manager ended with reference to the sale of defendant's petroleum products and did not extend to granting credits to plaintiff's customers or to modify defendant's accounting department practices. King did not construe his authority to extend as authorizing him to waive defendant's instructions with reference to collections made by plaintiff and their deposits in defendant's depository bank. He, however, took the matters up with Mr. Threlkeld, defendant's Division Auditor, who requested King to advise plaintiff to handle the matter as contained in their contract.

The record does not disclose that either King or Threlkeld had the authority to waive the terms of plaintiff's contract with defendant, nor is the evidence susceptible of convincing proof that they attempted so to do.

To sustain defendant's contention that King's authority was limited to matters of sales and not credits, and that such authority was known and understood by plaintiff, is amply supported by the record that when plaintiff requested an extension of credit for Simco, he was advised by King that such authority would have to come from defendant's home office.

The plaintiff does not, as indeed he cannot, challenge the correctness of the Simco account as all the information therein contained as to sales, deliveries, collections and deposits were made up from plaintiff's report to defendant.

As we view the record, the evidence shows that the plaintiff exceeded his written authority in making deliveries of defendant's petroleum products to Simco; that he exceeded his authority in taking up the Simco checks from defendant's depository bank in the manner here disclosed and concealing that fact from the defendant. This evidence establishes beyond controversy that defendant's statement of Simco's account furnished Simmons, did not reflect the collection covering the sale of defendant's products on October 2 and October 12, 1948, covering the two checks here involved.

■ Where the evidence of plaintiff, together with such inferences and conclusions as may reasonably be drawn therefrom, does not warrant recovery against defendant, a demurrer to the evidence or a motion for a directed verdict should be sustained. Boles v. Johnson, 205 Okl. 356, 237 P.2d 620.

■■ Where the evidence as shown by this record discloses that defendant's territory manager, King, was employed solely by defendant to make sales of defendant's petroleum products and to assist defendant's local bulk sales agent to make sales of its products, and that such agent was clothed with such circumscribed authority,

and his act transcends his powers, one dealing with such agent, cannot hold his principal on the theory of such agent's apparent authority. Home Owners Loan Corporation v. Thornburgh, 187 Okl. 699, 106 P.2d 511.

The judgment is therefore reversed, with instructions to dismiss the action with prejudice.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, WILLIAMS and BLACKBIRD, JJ., concur.