**Don LANGDON, Appellee,**

v.

**SAGA CORPORATION, Appellant.**

**No. 49159.**

Court of Appeals of Oklahoma, Division No. 1.

Dec. 28, 1976.

Rehearing Denied Feb. 1, 1977.

Released for Publication by Order of Court of Appeals March 3, 1977.

Donovan, Freese & March, P. A. by John M. Freese, Gregory G. Gibson, Tulsa, for appellee.

Livingston & Livingston by John J. Livingston, Robert H. Fain, Jr., Tulsa, for appellant.

ROMANG, Judge:

In this action Don Langdon (Plaintiff) was an employee of Saga Corporation (Defendant) who was terminated by the Defendant. The Plaintiff sued claiming termination, accrued vacation pay, plus attorneys fees and costs. The jury returned a verdict for the Plaintiff. The Defendant appeals challenging the trial court's failure to sustain its demurrers to the evidence at the close of the Plaintiff's case and again at the close of Defendant's case, and the trial court's refusal to grant Defendant's motion for a directed verdict. No other errors are presented in Defendant's Petition in Error.

## I.

### STANDARD FOR REVIEW

A demurrer to the evidence or a motion for a directed verdict "should be overruled unless there is an entire absence of proof tending to show a right to recover . . . ." *Condo v. Beal,* 424 P.2d 48, 51 (Okl.1967). When considering such demurrer or motion we must accept as "true all of the evidence favorable to [the Plaintiff in this case] . . . together with all inferences that may be reasonably drawn therefrom and disregard all conflicting evidence favorable to" the Defendant. *Condo v. Beal,* supra. See also *Gowins v. Merrell,* 541 P.2d 857 (Okl.1975).

The heart of this dispute concerns the status and interpretation of Defendant's Personnel Manual. Plaintiff was employed by Defendant's predecessor. This employment was under an oral contract which provided for periodic compensation but which had no fixed term. Essentially this was an employment contract terminable at will by either party. In 1969 the Defendant merged with the predecessor company and Plaintiff continued in Defendant's employment. Upon the merger the Defendant extended certain benefits to management employees including the Plaintiff. These benefits were contained in a Personnel Manual which was distributed to the Plaintiff, among others. The benefits concerned in this action are the accrued but unused paid vacation time and certain severance allowances.

The Defendant argues (1) that its Personnel Manual is not a contract for lack of mutuality of obligation, (2) that the Personnel Manual is not a modification of the contract of employment because it is indefinite, (3) that the severance pay benefits are conditional, (4) that the Manual was improperly interpreted as regards the period of time to be included in the computation of severance pay and that the vacation pay was improperly computed.

## II.

### STATUS OF THE PERSONNEL MANUAL

Defendant argues that its Personnel Manual in no way forms part of the contractual obligations between the parties since the terms of the Manual can be changed unilaterally by the employer and the employee is under no obligation to work for any period. We think the argument misperceives the essence of the employer-employee relationship where either party may terminate the relationship at will.

The requirement for mutuality of obligation has been construed by the Supreme Court as simply the requirement that

there be consideration. *Consolidated Pipe Line Co. v. British Am. Oil Co.*, 163 Okl. 171, 21 P.2d 762 (1933). Most problems of mutuality of obligation arise when dealing with unilateral contracts. Frequently, a unilateral contract has been considered to be invalid on the ground that there was no mutuality of obligation. See the language in *Petroleum Research Corp. v. Barnsdall Refining Corp.*, 188 Okl. 62, 105 P.2d 1047, 1050 (1940). But a unilateral contract does not lack mutuality unless there is also a failure of consideration. Unilateral contracts contemplate an offer which is accepted by performance rather than a promise of performance. Cf. Restatement of Contracts § 12. The typical employment contract is used by Prof. Corbin as an example of a unilateral contract. 1 Corbin on Contracts § 70 p. 292–293. Corbin describes such a situation as follows:

"In a good many such cases, it has been held that the employee has made no promise of any kind; he accepts the offer by merely continuing to render the specified service, and becomes entitled to the promised salary in proportion to the work actually done. By such an interpretation of the expressions of the parties as this, the transaction is a 'hiring at will.' The employee is privileged to stop work at any time; the employer is bound by his promise to pay for service rendered, but has the power of revocation as to service not yet rendered." (footnotes omitted.)

█ The requirement of mutuality of obligation is best understood as the requirement of a *quid pro quo* for the creation of legally enforceable obligations. Corbin says "mutuality of obligation should be used solely to express the idea that each party is under a legal duty to the other; each has made a promise and each is an obligor." 1A Corbin on Contracts § 152 p. 4. Thus conceived it refers nct to unilateral contracts but to the bilateral agreements where the parties exchange promises for future performances. But it is not always so conceived. Where the performance is executed by the party who has not given a promise the requirement of mutuality is met. *Henry Keep Home v. Moore*, 198 Okl. 198, 176 P.2d 1016 (1947).

Under Oklahoma law the existence of a contract depends on four elements: (1) competent parties, (2) consent, (3) a legal object, and (4) consideration. 15 O.S. 1971, § 2. The parties consent must be (1) voluntary, (2) mutual, and (3) communicated. 15 O.S. 1971, § 51.

Turning to our facts, and construing them favorably to the Plaintiff, we find that the Plaintiff was employed at will by Defendant's predecessor and the Defendant. When Defendant issued its Personnel Manual it offered benefits calculated to induce employees to increase production and remain with the company. The Personnel Manual defines the Defendant's "corporate creed" and includes as objectives (1) the development of a superior management team, and (2) to assure fair and equitable compensation and personal growth for employees.

█ Construing Plaintiff's continued employment with Defendant as employment at will whereby either party could terminate the relationship it is still evidence that until termination the parties had a contractual relationship. It is possible to construe the Personnel Manual as an offer for a unilateral contract accepted by the Plaintiff's continuing to work for the Defendant and forgoing his option of termination. Consideration sufficient to support a contract is defined as "any benefit conferred . . . to which the promisor is not lawfully entitled [i. e., continued employment], or any prejudice suffered . . . other than such as he is at the time of consent lawfully bound to suffer [i. e., forgoing termination]." Where an employee at will forgoes options to refuse future performance in reliance or in partial reliance on articulated personnel policies of the employer, the employer is bound by those policies insofar as they have accrued to an employee for performance rendered while they were in effect and have not been excluded or modified by another valid contractual arrangement. The employer remains free to modify such policies prospec-

tively and to the extent there is no accrual, as in the case of vacation and severance pay in the instant contract. We thus conceive personnel policies extending benefits as unilateral offers which are accepted by continued performance. The requirement of mutuality is met in that no benefits accrue under those policies until performance has occurred. *Henry Keep Home v. Moore*, supra. The fact that the quantum of performance may be small or undefined in amount does not matter in a case such as this where the quantity of work is defined in terms of time and where the employer could condition new benefits on continued employment for some minimum period.

We conclude that the Personnel Manual did not modify any prior contract but became a new contract which defined the employer-employee relationship during the period the policy was in effect and the employee performed.

### III.

### CONSTRUCTION OF THE CONTRACT

Defendant argues that even if the Manual was part of the employment contract that the provision for severance and vacation pay is conditional and subject to disallowance where the employee is terminated for disloyalty, as alleged in this case. Defendant points to the following provisions of Policy # 5.80:

"When the company initiates the termination, an allowance will normally be paid.

\*  \*  \*  \*  \*  \*

"The supervisor may recommend deviation from the prescribed allowances in cases of overt disloyalty to [the Defendant], knowing deviation from standard practice or policy, or for any reason he feels is justifiable. Deviations must be approved by the group executive vice president."

Defendant thus argues that severance pay is due only if (1) the employee is terminated and (2) the supervisor does not recommend deviation from the prescribed allowances. It further contends that it has the "unfettered" discretion to administer its policies.

Construing the contract against the drafter, i. e., the Defendant, it seems reasonably calculated to provide for severance pay in the "normal" situation. Where a supervisor recommends deviations there may be variances in severance pay if the recommendations are approved by the "group executive vice president." The contract limits cases of deviations from prescribed severance benefits to (1) overt disloyalty, (2) knowing deviation from standard practice or policy, and (3) other reasons considered justifiable by the supervisor. Whether a deviation occurred because of disloyalty or knowing deviation from company policy clearly presents a jury question on this record. But Defendant argues that the third provision, supra, authorizes unilateral discretion to refuse termination pay as a matter of law. We think the language does not go so far. The broad language of the third provision does authorize wide discretion but we believe that taken in context and as a matter of logical intendment the broad language has at least two limiting features.

In the first place the supervisors reason for deviation is one which he feels is justifiable. While this might be construed as a grant of absolute discretion, it is seen that the supervisor's reason must be justifiable to him *and* approved by an executive vice president. The clear implication is that the reason must have a justification which furthers the corporate interests of the Defendant and cannot be purely personal. Secondly, the broad phrase must be considered limited by the kinds of reasons for deviation listed prior to the broad discretion. Thus the reasons considered justifiable by the supervisor must be the same kind of reason as overt disloyalty and knowing deviation from company policy. While an employer may legally announce policies which may be withdrawn for its own reasons, it must take care in so doing since loss of accrued rights are not favored. A reasonable construction of this contract clearly

discloses an intention that the other reasons for deviation should be of the kind listed and in reasonable furtherance of corporate interests. We believe this is the only possible construction compatible with the assumed good faith of the parties. Taking this construction it would have been reversible error to sustain either the demurrers to the evidence or the motion for a directed verdict. Since there was no challenge to the instructions we express no opinion on their accuracy. *Atchison, Topeka and Santa Fe Railway Co. v. Marzuola*, 418 P.2d 625 (Okl.1966).

## IV.

## COMPUTATION OF BENEFITS

Finally, Defendant argues that the period of time used for computation of severance pay must be limited to the period from the introduction of the new policy until termination rather than for the Plaintiff's entire employment with Defendant and its predecessor. While we might concur with Defendant's argument and while the issue might depend on the terms of the merger agreement, we express no opinion since this argument goes to the instructions to the jury and not the trial court's ruling on a demurrer to the evidence or motion for a directed verdict. While it might have been the subject of a motion for partial direction it is clearly not an issue raised in this appeal.

Similarly, Defendant's argument that all vacation pay due was paid is a factual question for the jury under proper instructions and not raised in this appeal.

We find the trial court did not commit error when it overruled Defendant's demurrers to the evidence and motion for a directed verdict and accordingly we affirm the judgment below.

AFFIRMED.

REYNOLDS, P. J., and BOX, J., concur.