**Jamison v. Kiwi Brands Inc.**

*Kenneth R. Werner,* for plaintiff.
*J. Freedley Hunsicker Jr.,* for defendant.

SMITH, *J.,* November 2, 1988—This case arises from a complaint alleging that plaintiff, William J. Jamison, was promised by agents of defendant, Kiwi Brands Inc., that upon retirement plaintiff would receive a supplemental executive retirement plan (SERP) that would pay plaintiff more than $23,000 per year. Plaintiff alleges that defendant reneged on the alleged "contract" regarding the SERP. In response, defendant has moved for summary judgment on the ground that no binding agreement regarding a SERP ever existed between plaintiff and defendant, because defendant's "promise" of a SERP was unsupported by consideration.[1]

It is fundamental hornbook law that consideration is a bargained-for exchange, evidenced by a benefit to the promisee and a detriment to the promisor. *Estate of Beck,* 489 Pa. 276, 414 A.2d 65 (1980); *Williston on Contracts,* Ch. 6 (3d Ed. 1957). However, in the instant case, it is undisputed that the alleged contract for a SERP was unsupported by the aforementioned elements of consideration. Plaintiff's deposition included the following relevant exchange:

Q:   During all the time when you had discussions with Mr. Burnett or other individuals at Kiwi concerning a possible SERP, was it ever agreed that in exchange for your getting a SERP you would assume greater duties or do anything different than you had been doing?

---

1. Defendant disputes plaintiff's averment that defendant "promised" a SERP. However, for the purpose of deciding the motion for summary judgment, we shall presume that such a promise was made.

14

A: No.

Q: So the SERP from your viewpoint was intended to be essentially a sweetening of your package in your current capacity?

A: Yes.

Ordinarily, the circumstances of this case would be sufficient to demonstrate grounds for summary judgment without further elaboration. However, plaintiff has sought to inject an issue into this case regarding plaintiff's status as an at-will employee. Plaintiff has drawn our attention to Judge Beck's concurring opinion in *Darlington v. General Electric,* 350 Pa. Super. 183, 504 A.2d 306 (1986), wherein Judge Beck enunciated her theory that:

"Provisions in a handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties. See *Banas v. Matthews International Corp.,* 348 Pa. Super. 464, 502 A.2d 637 (1985). A unilateral contract is a contract wherein one party makes a promissory offer which calls for the other party to accept by rendering a performance. See Restatement (Second) of Contracts §45 and comment (a) thereunder (1981). In the employment context, the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms. The employee signifies acceptance of the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required." *Id.* at 212, 504 A.2d at 320. While Judge Beck's opinion was specifically addressed to a case involving an employee handbook, the dictum regarding consideration is nonetheless relevant for the purpose of our present analysis.

The unilateral contract theory of employee manuals has been developed by various jurisdictions in

response to a growing awareness of the job security problems that customarily attend at-will employment. The theory may be viewed as a thoughtful attempt on the part of the judiciary to ameliorate the extent to which freedom of contract diminishes job security for at-will employees. However, the judicial innovations in this area have not consistently rested on sound jurisprudential bases. The Superior Court recognized this in *Martin v. Capital Cities Media Inc.*, 354 Pa. Super. 199, 511 A.2d 830 (1986), wherein the court observed:

"Taking a nationwide view of the law in this area, it is apparent that what once was the corpus juris of employment relations has lately become an amorphous mass of confusion replete with holdings that defy reconciliation from one jurisdiction to the next. The at-will presumption, the citadel that once governed the field with such predictability, has been eroded of late by piecemeal attacks on both the contract and tort fronts and the entire field seems precariously perched on the brink of change.

"Pennsylvania has thus far escaped the widescale turbulence so common to the field and clings to the at-will presumption. We stated in *Darlington v. General Electric,* 350 Pa. Super. 183, 191-2, 504 A.2d 306, 310 (1986): 'Even had we been asked to review the question of whether the at-will presumption should be abrogated, we are not at liberty to so hold given our Supreme Court's stance on the issue. See *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). *Moreover, we believe that if terminable at-will contracts are to be forbidden, the judicial process may be an inappropriate forum for such sweeping policy change.'* " *Martin, supra.* (emphasis supplied)

Although the judicial innovations addressed in *Martin* were originally directed toward the job secu-

rity problems associated with at-will employment,[2] one legal fiction associated with those innovations—i.e., the fiction that continued performance by an at-will employee constitutes consideration for a unilateral offer found in an employee manual—was phrased in terms borrowed from the larger field of contract law, and thus poses a danger of diminishing the intelligibility of contract law. The Superior Court apparently was mindful of this problem when it held:

---

2. Judge Beck's opinion in *Darlington, supra,* refers to the following cases in support of the unilateral contract theory of employee manuals:

*Salimi v. Farmers Insurance Group,* 684 P.2d 264 (Colo. App. 1984); *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn. 1983); *Morris v. Lutheran Medical Center,* 215 Neb. 677, 340 N.W.2d 388 (1983); *Southwest Gas Co. v. Ahmad,* 99 Nev. 594, 668 P.2d 261 (1983); *Woolley v. Hoffmann-LaRoche Inc.,* 99 N. J. 284, 491 A.2d 1257 (1985); *Hillis v. Meister,* 82 N.M. 474, 483 P.2d 1314 (1971); *Weiner v. McGraw-Hill Inc.,* 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982); *Langdon v. Saga Corp.,* 569 P.2d 524 (Okla. Ct. App. 1976); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081 (1984).

All of the above-cited cases were concerned with job security provisions, with the partial exception of *Langdon v. Saga Corp.,* which also involved accrued vacation benefits. However, regarding those vacation benefits, the *Langdon* court stated:

"The employer remains free to modify such policies prospectively *and to the extent there is no accrual,* as in the case of vacation and severance pay in the instant contract." (emphasis supplied)

Thus, the *Langdon* court recognized a limitation on the unilateral contract principle in cases such as the matter at hand which do not involve job security provisions. Furthermore, for reasons to be addressed *infra,* we do not find that the *Langdon* court adequately addressed the jurisprudential problems latent within the approach taken in *Langdon* and in the above-cited cases.

"We believe that the holding in *Richardson, supra,* is more in keeping with the philosophy of the at-will presumption than is the line of cases finding contractual significance in handbooks. And, we might add, it is more in keeping with our holding in *Darlington, supra, wherein we cautioned against further burdening of the judicial process with expanding the bases for recovery in this field. Richardon* held that handbooks are not contracts because they lack consideration." *Martin, supra.* (emphasis supplied)[3]

The present case is a perfect example of the danger, forseen by the *Martin* court, posed to the coherence of the judicial process by the innovative legal fictions that have come to be associated with at-will employment. The present case does not concern job security provisions, but a gratuitous "sweetening of the pot." Furthermore, and more importantly for the purpose of our analysis, several months prior to plaintiff's "early retirement" plaintiff had been made aware that defendant did not plan to provide a SERP. This kind of situation presents a problem not anticipated by the broad language explaining the "unilateral contract" approach to at-will employment: Whereas prior cases inventing the "unilateral contract" approach dealt primarily (and to our knowledge, solely)[4] with job security concerns, the

---

3. The holding of *Richardson v. Charles Cole Memorial Hospital,* 320 Pa. Super. 106, 466 A.2d 1084, stating that employee handbooks are not unilateral contracts because they lack consideration, was reaffirmed in *Reilly v. Stroehmann Bros. Co.,* 367 Pa. Super. 411, 532 A.2d 1212 (1987).

4. Our research reveals an unadulterated consistency in these cases, all of which deal with job security. The remote possibility that a maverick case may have applied the unilateral contract approach to an "early retirement" case does not negate the fact that the approach was invented for application to suits involving job security.

instant plaintiff is seeking to bind his former employer to an alleged "promise" by pointing out that he *voluntarily* terminated his own employment. Stated another way, to apply the "unilateral contract" approach in this situation would be to state that once an employer chooses to change a policy regarding a retirement benefit, a dissatisfied employee can bind the employer to the previous "unilateral contract" merely by retiring and thereby refusing to "accept" the new offer with the "consideration" of continued service. Considering that the benefit to be gained by the employee in such a manner would be a substantial, *quantifiable* benefit, as distinguished from the situation posed by a unilateral offer establishing *job security*,[5] it is clear that to apply the "unilateral contract" approach in such a case would be to turn the notion of bargained-for exchange topsy-turvy. It is manifestly absurd to suggest that an employee can bind an employer to a bargained-for exchange concerning new retirement benefits by discontinuing employment in order not to ratify a new contract denying those new retirement benefits. This kind of problem was alluded to in *Woolley v. Hoffmann-LaRoche,* 99 N.J. 284, 491 A.2d 1257 (1985), which Judge Beck relied upon in the concurring opinion in *Darlington, supra,* as authority for the unilateral contract approach to at-will employment. The *Woolley* court stated, in relevant part:

"Further problems may result from the employer's explicitly reserved right unilaterally to change the manual. *We have no doubt that, generally, changes in such a manual, including changes in terms and conditions of employment, are permitted.*

---

5. In this regard, see the discussion of *Langdon* in note 2, *supra.*

We express no opinion, however, on whether or to what extent they are permitted when they adversely affect a binding job security provision." *Woolley,* 491 A.2d at 1270-1. (emphasis supplied)

While the *Woolley* court recognized the right of an employer to unilaterally change the terms of employment, the court unfortunately neglected to consider the problems posed by cases such as the matter before us. While we recognize that the at-will employment doctrine does pose significant problems regarding job security, we take this opportunity to caution against resorting to jurisprudentially unsound innovations in order to remedy those dilemmas.

Therefore, applying the reasoning of *Martin, supra,* and the cases cited therein, we hold that the alleged promise of a SERP was unsupported by consideration. Accordingly, we enter the following

### ORDER

And now, November 2, 1988, the motion for summary judgment is granted.