F I L E D
United States Court of Appeals
Tenth Circuit

FEB 25 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ARTHUR L. BLACK,

      Plaintiff-Appellant,

v.

BAKER OIL TOOLS, INC., a division
of Baker Hughes, Inc., a corporation,

      Defendant-Appellee.

No. 96-5049

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 95-C-126-K)**

---

Thomas L. Bright, Tulsa, OK, argued the cause for the appellant.

Deirdre O. Dexter, Tulsa, OK, argued the cause for the appellee. Rebecca S. Woodward, Tulsa, OK, assisted on the brief.

---

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **KELLY**, Circuit Judge.

---

**EBEL**, Circuit Judge.

Plaintiff Arthur L. Black ("Black") had two heart attacks while working as an engineering supervisor for Baker Oil Tools ("Baker Oil"). After the second heart attack, Baker Oil did not allow Black to continue working.

Black sued Baker Oil in Oklahoma state court for breach of contract, claiming that under Oklahoma law, Baker Oil created an employment contract by issuing him a supervisors' manual and verbally reiterating the policies contained therein. Black claimed that Baker Oil breached the provisions of the alleged "contract" (the supervisors' manual) prohibiting discrimination against handicapped people, when it constructively discharged him because of his heart condition.

Baker Oil, a Texas-based corporation, removed the case to federal district court under 28 U.S.C. § 1332 (1994) (diversity jurisdiction). The district court subsequently granted Baker Oil's motion for summary judgment. Black v. Baker Oil Tools, No. 95-C-126-K, slip op. at 5 (N.D. Okla. Feb. 8, 1996) (Order granting summary judgment) (Kern, J.). Black appeals pursuant to 28 U.S.C. § 1291 (1994). Because we agree with the district court that no contract was ever created between Black and Baker Oil, we affirm.

## BACKGROUND

Arthur L. Black joined the Baker Oil Tool Company as an engineering supervisor in 1984. He suffered his first heart attack in 1988; his second in July, 1992. Following the 1992 heart attack, one of Black's treating physicians, Dr. Gregory J. McWilliams, wrote that Black had lost more than 70% of his heart function and should retire. By September, 1992, Dr. McWilliams's report had come to the attention of Black's immediate supervisor Richard Forehand. Forehand, after consulting with other top management at Baker Oil, offered Black a choice between "voluntary" retirement or a

long-term disability leave of absence. Black chose retirement, though he protested that he would rather keep working. Under the "retirement plan," Black kept his medical benefits, but received no other retirement benefits.

During Black's tenure at Baker Oil, Black was issued a copy of Baker Oil's "Supervisor Human Resource Policy Manual" (the "Supervisor's Manual"), which contained a two-page statement entitled "Human Resources Policies: Equal Employment Opportunity" (the "EEO Statement"). The EEO Statement expressed Baker Oil's anti-discrimination policies, including a policy forbidding discrimination against the physically handicapped. While working for Baker Oil, Black was additionally apprised of Baker Oil's anti-discrimination policies at a managers' meeting in Houston (the "Houston meeting") conducted by a Baker Oil vice-president of human resources. At the same time he was issued the Supervisor's Manual, Black was also issued copies of Baker Oil's Human Resources Policies and Procedures Manual (the "Policy Manual") and the Baker Employee Handbook ("Employee Handbook"), each of which expressly disclaimed creating any implied or express contractual obligations. The Policy Manual contained the same EEO Statement that appeared in the Supervisor's Manual.

In September, 1994, Black sued Baker Oil in Oklahoma state court. Baker Oil removed the case to federal district court, where Black twice amended his complaint. The district court granted summary judgment in favor of Baker Oil on all of Black's claims contained in his second amended complaint. Black has appealed. We affirm.

## DISCUSSION

### Standard of Review

We review a grant of summary judgment *de novo*. Applied Genetics Int'l, Inc. v. First Affiliated Sec., 912 F.2d 1238, 1241 (10th Cir. 1990). We apply the same standard under **Fed. R. Civ. P.** 56(c) used by the district court: we determine whether a genuine issue of material fact was in dispute, and, if not, whether the substantive law was correctly applied. Id. To demonstrate the existence of a material issue of fact, the nonmoving party may not rest on its pleadings. Id. Rather, the nonmoving party must set forth specific facts showing that there is a genuine issue of fact for trial as to those dispositive matters for which it carries the burden of proof. Id. Genuine factual issues must be supported by "more than a mere scintilla of evidence." Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir.1993) (citing Anderson v. Liberty Lobby Inc., 477 U.S. 242 (1986)). "To avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." Id.

### The Contract Claim

We apply the substantive law of Oklahoma in deciding this case. See Barrett v. Tallon, 30 F.3d 1296, 1300 (10th Cir. 1994) (a federal court sitting in diversity applies the

- 4 -

substantive law of the forum state). In general, Oklahoma is an "employment-at-will" state. Burk v. K-Mart Corp., 770 P.2d 24, 26 (Okla. 1989). In the absence of an express or implied agreement to the contrary between an Oklahoma employer and its employees, the employer may terminate an employee at any time "for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong." Id. "Where an employment contract is of indefinite duration, it is terminable at will by either party," subject to certain exceptions. Hayes v. Eateries, Inc., 905 P.2d 778, 781-82 (Okla. 1995). In Oklahoma, "no implied covenant of good faith and fair dealing . . . governs the employer's decision to terminate in an employment-at-will contract." Burk, 770 P.2d at 27. If Black was an "at-will" employee in 1992, then he lacks any claim cognizable under Oklahoma law.

The mere fact that Black and Baker Oil never signed any traditional employment contract, however, is not fatal to Black's claim. "A contract consists not only of the agreements which the parties have expressed in words, but also of the obligations which are reasonably implied. . . ." Id. at 26-27 (quoting Wright v. Fidelity & Deposit Co. of Md., 54 P.2d 1084, 1087 (Okla. 1935)); see also **Okla. Stat. Ann.** tit. 15, § 131 (West 1996) ("A contract is either express or implied"); **Okla. Stat. Ann.** tit. 15, § 133 (West 1996) ("An implied contract is one, the existence and terms of which are manifested by conduct."). In Oklahoma, "normally the issue of whether an implied contract exists is

factual." Hayes v. Eateries, Inc., 905 P.2d 778, 783 (Okla. 1995) (citing DuPree v. United Parcel Serv., 956 F.2d 219, 222 (10th Cir. 1992)).

Oklahoma analyzes claims of an implied contract right to job security by balancing several relevant factors, including: "(a) evidence of some 'separate consideration' beyond the employee's services to support the implied term, (b) longevity of employment, (c) employer handbooks and policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices and (e) promotions and commendations." Hinson v. Cameron, 742 P.2d 549, 554-55 (Okla. 1987). These factors are all to be weighed, but need not each be proven in order for a court to find an implied contract. Id.

In the present case, Black points to no "separate consideration" furnished by him in exchange for his claimed right to job security, beyond his continued employment at Baker Oil. Similarly, he presents no evidence that he detrimentally relied on the language in Baker Oil's EEO Statement by, for example, foregoing other employment opportunities. He presents no evidence of promotions or commendations, nor any evidence of any definite term of employment specified in the contract. Although he does present evidence of longevity of employment (11 years), he does not claim that this

longevity relates in any way to his breach of contract claim. Rather, Black essentially rests his case on the existence and contents of employer handbooks and policy manuals.[1]

To contribute to the creation of an implied contract, "the promises in the employee manual which may operate to restrict the employer's power to discharge must be in definite terms--not in the form of vague assurances." Gilmore v. Enogex, Inc., 878 P.2d 360, 368 (Okla. 1994). Thus, although the issue of whether an implied contract exists is normally factual, if the alleged promises are "nothing more than vague assurances," then the issue can be decided as a matter of law. Hayes, 905 P.2d at 783 (citing Dupree v. United Parcel Serv., 956 F.2d 219, 222 (10th Cir. 1992)). "Guarantees" in a employee manual are merely "vague assurances" if they do not purport to place "substantive restrictions" on the reasons the employer may terminate the employee. Id. (citing Blanton v. Housing Auth., 794 P.2d 412, 415 (Okla. 1990)).

In the case at bar, the parties agree that the relevant portion of the Supervisor's Manual is the EEO Statement. The Statement, in pertinent part, provides that:

GENERAL:
    It is the policy of Baker Oil Tools to grant equal employment opportunity to all qualified persons without regard to . . . physical . . . handicap. . . . To deny one's contribution to our efforts because he or she is a member of a minority group is an injustice, not only to the individual, but to the company as well. It is the intent and desire of the company that equal employment opportunity will be provided in employment, promotions,

---

[1]He also adds that, at the Houston meeting, Baker Oil verbally manifested its intention to adhere to the antidiscrimination policies contained in its manuals, and that it never retracted any statements to that effect.

wages, benefits and all other privileges, terms, and conditions of employment.

SCOPE:
The Baker Oil Tools policy of non-discrimination must prevail throughout every aspect of the employment relationship, including . . . layoff . . . and termination.

PURPOSE
The purpose of this policy is to affirm the Division's position regarding non-discrimination in all matters relating to employment throughout the organization.

APPLICATIONS
All relations and decisions pertaining to employment . . . [and] terminations . . . will be executed without regard to . . . physical . . . handicap. . . .

The threshold issue, then, is whether these provisions are merely "vague assurances," or, rather, whether they purport to place substantive limitations on Baker Oil's power to discharge handicapped employees. We note that although these provisions do not purport to extend any specific procedural rights to employees, the "APPLICATIONS" provision *does* purport to guarantee, substantively, that employees will not be terminated on the basis of physical handicap. The district court found, as a matter of law, that "the EEO statement itself did not provide 'in definite terms' a guarantee against discharge due to handicap, but rather was a general policy statement of nondiscrimination." Black, slip op. at 4-5 (citing Gilmore, 878 P.2d at 369; DuPree, 956 F.2d at 222). Reviewing this conclusion *de novo*, we disagree. We believe the promise that "[a]ll relations and decisions pertaining to employment . . . [and] terminations . . .

will be executed without regard to . . . physical . . . handicap. . . ." is more than a mere "vague assurance" or "puffery," but rather is a "substantive restriction" on Baker Oil's ability to terminate its employees.

Having passed this threshold, the next issue is whether Baker Oil effectively *disclaimed* any representations in the Supervisor's Manual altering the at-will employment relationship. See Johnson v. Nasca, 802 P.2d 1294, 1297 (Okla. Ct. App. 1990) ("While an employer may disclaim the creation of contractual rights, such a disclaimer must be clear."); see generally George L. Blum, Annotation, Effectiveness of Employer's Disclaimer of Representations in Personnel Manual or Employee Handbook Altering At-Will Employment Relationship, 17 A.L.R.5th 1, 88-94 (1994 & Supp. 1996) (surveying cases where employer's disclaimer of intent to create contractual liability was alleged to have been ineffectively communicated to employee). The Supervisor's Manual contained no disclaimers--clear or otherwise--of any intention to form any implied contract. As the district court noted, however, an EEO statement identical to the one contained in the Supervisor's Manual was also contained in the Policy Manual, which, like the Supervisor's Manual, was given to all supervisors, including Black. The Policy Manual began with the following disclaimer: "This Manual is not intended to contain a complete listing of all Baker Oil Tools' policies nor is it intended to imply any contractual obligations. Baker Oil Tools expects to continue these policies indefinitely but reserves the right to terminate or amend them at any time." (emphasis in original). In addition,

- 9 -

the Employee Handbook, which did not contain the EEO statement, began with an introduction containing the following statements:

> This handbook is not an employment agreement, a contract of employment, or a guarantee of continued employment with Baker Oil Tools and/or its subsidiaries, foreign or domestic. Employment with Baker Oil Tools is 'at-will,' which means that you or Baker may terminate the employment relationship at any time.

. . .

> **DISCLAIMER**: This employee handbook has been drafted as a guideline for our employees. It shall not be constructed to form a contract between the Company and its employees. Rather, it describes the Company's general philosophy concerning policies and procedures.

The district court found that, as a result of the disclaimers in the Policy Manual and the Employee Handbook, a reasonable trier of fact would be compelled to find that Black was "on notice that the EEO statement was not meant to imply contractual obligations upon Baker." Once again, we disagree. The disclaimer in the Policy Manual referred to "*This* Manual." The disclaimer in the Employee Handbook referred to "*This* handbook." It is not obvious or inevitable that these disclaimers would be understood by a reasonable reader to encompass *all* manuals and handbooks promulgated by Baker Oil, despite their plain language to the contrary.[2] Further, Black, in his affidavit, denied knowledge of the disclaimers in the other two manuals, claiming that, as a supervisor, he

---

[2]Indeed, a supervisor in Black's position might have reasonably believed that the disclaimers in the employee manuals were absent from the Supervisor's Manual precisely because supervisors were provided with rights not extended to lower-ranking employees.

familiarized himself only with the Supervisor's Manual.  Therefore, it was error to grant summary judgment to Baker Oil on the basis that the disclaimers were clear and effective.

We thus disagree with the district court's conclusion that no reasonable jury could find that the Supervisor's Manual itself could fulfill the "employer handbooks and policy manuals" prong of the five-part Hinson test.  Accordingly, we find that Black has satisfied one of the five Hinson factors: (1) a promise contained in an employer handbook and/or policy manual, and not effectively disclaimed.[3]

On the other hand, we agree with the district court's conclusion that Black failed to satisfy the other four Hinson factors: (1) evidence of some "separate consideration" beyond the employee's services to support the implied term; (2) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices; (3) promotions and commendations; or (4) longevity of employment where such longevity can be linked in some way to the alleged promise sought to be enforced against the company.

Unfortunately, neither the Hinson Court nor any subsequent Oklahoma court has indicated how the five Hinson factors should be weighed when, as here, they weigh in opposite directions.  We note, however, that the court in Gilmore v. Enogex, Inc., 878 P.2d 360 (Okla. 1994), while citing Hinson, recognized that an implied employment

---

[3] As noted previously, Black also established his longevity of employment at Baker Oil, but he did not relate this Hinson factor in any way to Baker Oil's alleged promise of nondiscrimination in terminations.

- 11 -

contract claim might be brought based solely on the language of an employee manual.  Id.

at 368 & nn.38-39.  In evaluating the merits of such a claim, the Gilmore court reverted to

the general contract principles articulated in **Okla. Stat. Ann.** tit. 15, § 2 (West 1996) (a

contract requires: (1) parties capable of contracting; (2) their consent; (3) a lawful object;

and (4) sufficient cause or consideration).  See id.[4]

_____

[4]The Gilmore court has some additional language stating that an employee manual
"only alters the at-will relationship with respect to *accrued* benefits--it does not limit
prospectively the power of either party to terminate the relationship at any time. . . ."
Gilmore, 878 P.2d at 368 & n.40 (citing Langdon v. Saga Corp., 569 P.2d 524, 527-28
(Okla. Ct. App. 1976)) (emphasis in original).  Taken literally, this statement might imply
that an employee handbook or manual could *never* support an employee's claim to job
security under Oklahoma contract law, because termination can be expressed
prospectively.  Yet Oklahoma courts both before and after Gilmore have recognized the
potential viability of job security claims predicated on handbook promises.  See Hayes,
905 P.2d at 783 (handbook promises to job security which are definite and not "vague
assurances" may be enforceable if reasonably relied on by employee) (decided after
Gilmore);  Hinson, 742 P.2d at 554-55 (establishing five-factor test for analyzing
employee manual-based claim to job security) (decided before Gilmore).
        The resolution of this apparent inconsistency may lie in the fact that neither
Gilmore nor Langdon involved a handbook-based claim to a right to *job security*.  See
Gilmore, 878 P.2d at 368-69 (denying alleged handbook-based right of employee to
refuse a mandatory drug test); Langdon, 569 P.2d at 526-28 (approving handbook-based
right of employee to accrued but unused paid vacation time and certain severance
allowances).  It is likely, therefore, that Gilmore means only that an employer who has
issued a handbook specifying the terms and conditions of employment generally remains
free to terminate or modify those terms and conditions prospectively, by, for example,
rescinding, replacing, or modifying the handbook.  If the employee assents to the new
terms and conditions of employment (by continuing to work or otherwise), then the new
handbook governs the employment relationship prospectively, while the superseded
handbook continues to govern disputes related to benefits accrued prior to the
modification.  The accrued/prospective dichotomy is hard to apply in a case involving a
claim for job security.
        In any event, even assuming *arguendo* that Baker Oil retained at all times the
(continued...)

Following the lead of the <u>Gilmore</u> court, we analyze Black's claim in light of these general contract principles as applied by Oklahoma courts. We find that Black and Baker Oil were parties capable of contracting, and that agreeing to employment free of discrimination based on physical handicap would be a lawful object for a contract. We do not reach the issue of whether the parties "consented" to a contract within the meaning of **Okla. Stat. Ann.** tit. 15, § 2(2) (West 1996), because we find no evidence that Black gave consideration for this promise as required by **Okla. Stat. Ann.** tit. 15, § 2(4) (West 1996). Based on our finding of no sufficient consideration, we find that no contract was created by the Supervisor's Manual.

Under **Okla. Stat. Ann.** tit. 15, § 2(4) (West 1996), "[s]ufficient cause or consideration" is "essential to the existence of a contract." In 1890, however, the Oklahoma legislature modified the common-law "pre-existing duty rule," to allow enforcement of contracts supported only by promises to perform pre-existing obligations. See **Okla. Stat. Ann.** tit. 15, § 107 (West 1996) ("An existing legal obligation resting on the promisor . . . *is also* a good consideration for a promise, to the extent corresponding

---

[4](...continued)
power to modify prospectively its employees' alleged handbook-based right to job security, Baker Oil never exercised this right prior to terminating Black. Specifically, Baker Oil never modified, either expressly or by implication, its promise (contained in the Supervisor's Manual) not to discriminate in terminations on the basis of a physical handicap. Thus, if we find that the language in the Supervisor's Manual otherwise vested Black with a limited contractual right to job security, nothing in <u>Gilmore</u> would preclude the enforcement of that right against Baker Oil.

with the extent of the obligation, but no further or otherwise.") (emphasis added).

Oklahoma courts, however, have enforced such contracts exceedingly sparingly, more often indicating that contracts are unenforceable if they rest solely on pre-existing obligations for consideration. See e.g. Gragg v. James, 452 P.2d 579, 587 (Okla. 1969) ("Performance of . . . obligations a party already is legally bound to perform, is *not* sufficient consideration to support a contract.") (emphasis added) (citing Home Owners' Loan Corp. v. Thornburgh, 106 P.2d 511, 512 (Okla. 1940); Watson v. American Creosote Works, Inc., 84 P.2d 431, 433, 434 (Okla. 1938)); accord Bowers v. Missouri State Life Ins. Co., 169 P. 633, 635-36 (Okla. 1917) (per curiam); Maker v. Taft, 139 P. 970, 971 (Okla. 1914) (per curiam); compare Kaiser v. Fadem, 280 P.2d 728, 731 (Okla. 1955) (relying on **Okla. Stat. Ann.** tit. 15, § 107 to enforce a contract in which the consideration for a promise was only a moral--but not a legal--obligation to pay for services previously rendered).

When we sit in diversity, "we must apply the most recent statement of state law by the state's highest court." Wood v. Eli Lilly & Co., 38 F.3d 510, 513 (10th Cir. 1994) (citation omitted). When Oklahoma's highest court has said that a pre-existing obligation cannot constitute consideration for a later promise, notwithstanding this statute, we must accept that interpretation of Oklahoma law.[5]

---

[5]Although neither Gragg nor its precedents make reference to **Okla. Stat. Ann.** tit. 15, § 107 (West 1996) or its predecessor statutes, we presume that the Oklahoma
(continued...)

- 14 -

In the case at bar, Black argues that he supplied two types of consideration in exchange for Baker Oil's promise not to terminate him on the basis of physical handicap: (1) he performed his job satisfactorily during his term of employment; and (2) he refrained from exercising his option to quit his job during that term. We find that, on the facts of this case, neither of these actions constitute consideration under Oklahoma law.

First, as discussed *supra*, Black had an existing legal obligation to perform his work for Baker Oil in exchange for his salary. Under Gragg v. James, 452 P.2d 579, 587 (Okla. 1969), Black's mere performance of this obligation could not constitute valid consideration to support a second contract or a contract modification.

In support of his second argument, Black cites our decision in Williams v. Maremont Corp., 875 F.2d 1476 (10th Cir. 1989). In Williams, we held that, under Oklahoma law, an employee's decision not to quit his job can constitute sufficient consideration to support an employer's promise, and thus form an employment contract. Id. at 1482 (citing Langdon v. Saga Corp., 569 P.2d 524, 527 (Okla. Ct. App. 1976)). We did not, however, imply that such a decision by the employee would *always* constitute valid consideration. Rather, we quoted an Oklahoma court's statement that "[w]here an employee at will forgoes options to refuse future performance *in reliance or in partial reliance on articulated personnel policies of the employer, the employer is bound by those*

---

[5](...continued)
Supreme Court has taken that statute into consideration in determining that performing a pre-existing duty is not sufficient consideration to support a contract in Oklahoma.

- 15 -

*policies* insofar as they have accrued to an employee for performance rendered while they were in effect and have not been excluded or modified by another valid contractual arrangement." Id. (quoting Langdon, 569 P.2d at 527) (emphasis in Williams). We emphasized the Langdon court's requirement of reliance to make it clear that in an action for enforcement of an alleged implied employment contract under Oklahoma law, the employee must prove that his decision not to quit, *at the time he made that decision*, was based at least in part on his reliance on the employer's promise. Accord Hinson v. Cameron, 742 P.2d 549, 556 n.28 (Okla. 1987).

Here, Black has introduced no evidence suggesting any such reliance on Baker Oil's promise during the term of his employment. Rather, he bases his claim exclusively on the mere fact of the printed text of the Supervisor's Manual, combined with the fact that he did not quit his job after he acquired knowledge of the promises contained in that Manual. However, in the absence of evidence that Black continued working for Baker Oil *in reliance on* the statement in the Supervisor's Manual that Baker Oil would not discriminate on the basis of a physical handicap, Black has failed to establish, under Oklahoma law, that his continued employment at Baker Oil constituted consideration sufficient to transform the Supervisor's Manual into an employment contract. Thus, Black remained an employee-at-will. Summary judgment in favor of Baker Oil was therefore proper. See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("To

- 16 -

avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.").

Because we affirm the district court's grant of summary judgment on the grounds that no contract was ever formed, we need not reach the issue, also not reached by the district court, of whether Baker Oil breached any contract that may have been formed.

**CONCLUSION**

We AFFIRM the order of the district court granting summary judgment in favor of Baker Oil on the ground that the record contained insufficient evidence of contract formation to support Black's claim under Oklahoma law.