**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 2 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

PAUL HEIMAN,

     Plaintiff-Appellant,

v.

UNITED PARCEL SERVICE, INC.,
an Ohio corporation,

     Defendant-Appellee.

No. 00-3005
(D. Kan.)
(D.Ct. No. 98-CV-2253)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TACHA**, Chief Judge, **SEYMOUR**, and **BRORBY**, Circuit Judges.

_____

Mr. Heiman worked at United Parcel Service ("United Parcel") for eighteen years, until his termination on December 2, 1998. He sued United Parcel alleging the company discriminated and retaliated against him in violation of the Americans with Disabilities Act of 1990 ("Disabilities Act"). [1] 42 U.S.C.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, _res judicata_ and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] Mr. Heiman also alleged United Parcel retaliated against him in violation of Kansas state law. The district court held Mr. Heiman failed to prove a _prima facie_ case of retaliation under state law. Mr. Heiman does not appeal, and we do not address, the

§§ 12101 - 12213.  The district court granted summary judgment in favor of United Parcel.  The court held Mr. Heiman failed to present a *prima facie* case that he is disabled or suffered retaliation.  Mr. Heiman appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.


## BACKGROUND

The material, relevant facts are either undisputed or viewed in the light most favorable to Mr. Heiman.  *See Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999).  Mr. Heiman worked for United Parcel as a feeder driver, which involved "regular, daily pushing, pulling and twisting in order to lift objects, as well as coupling and uncoupling the trailers which he hauled over the road on a regular, ongoing basis."  He underwent seven surgeries during his employment at United Parcel due to injuries to his back, neck, shoulders and knees.

To alleviate the physically demanding nature of his job, Mr. Heiman asked United Parcel to provide him with a Ford power steering tractor, which it did except for a few isolated occasions.  Ultimately, Mr. Heiman sought a transfer

district court's grant of summary judgment for United Parcel on this issue.

from his feeder driver position to a job requiring less physical exertion. United Parcel did not transfer him, and Mr. Heiman filed a complaint with the Equal Employment Opportunity Commission alleging United Parcel denied him a reasonable accommodation. On June 8, 1998, Mr. Heiman filed his complaint in district court, after receiving his "right to sue" letter from the commission. On October 2, 1998, Mr. Heiman served United Parcel with a copy of the complaint; United Parcel filed its answer on October 22, 1998.

On November 19, 1998, Mr. Heiman had an argument with David Larkin, a fellow United Parcel employee. Mr. Larkin subsequently filed a written complaint against Mr. Heiman. On November 23, 1998, Mr. Heiman met with his supervisors and Union steward to discuss the November 19th incident with Mr. Larkin. Initially, Mr. Cantrell, who is Mr. Heiman's immediate supervisor, told him he could continue working at United Parcel pending further investigation, but warned him to avoid contact with Mr. Larkin. However, Mr. Heiman became frustrated during the meeting and repeatedly asked Mr. Cantrell for a copy of Mr. Larkin's complaint. Mr. Cantrell and the Union steward both asked him to "calm down." After multiple requests, Mr. Cantrell told Mr. Heiman he was too confrontational and was being removed from service pending further investigation.

On December 2, 1998, Mr. Heiman received United Parcel's letter terminating him. The letter stated in relevant part:

> On November 23, 1998[,] we became aware of a serious incident you were involved in on November 19, 1998.
>
> On November 23, 1998[,] a meeting was held .... At this meeting you refused to listen to or follow your manager's instructions. This type of behavior will not be tolerated at United Parcel Service. You were taken out of service at that time.
>
> After a thorough investigation, due to the seriousness of this incident, in addition to the serious incident on November 19, 1998, you are herein notified your employment with United Parcel Service is terminated, effective December 2, 1998.

Mr. Heiman initially sued United Parcel alleging the company denied him a reasonable accommodation, and thereby discriminated against him in violation of the Disabilities Act. After his termination, Mr. Heiman amended his complaint to allege unlawful retaliation in violation of the Disabilities Act and Kansas state law. The district court granted United Parcel summary judgment. The court held Mr. Heiman failed to establish a genuine issue of material fact that he qualifies as disabled under the Disabilities Act. Specifically, the court concluded Mr. Heiman's evidence, *i.e.*, a report from a vocational expert, failed to show he was substantially limited in the major life activity of working. Moreover, the court held Mr. Heiman did not establish a *prima facie* case of retaliation because he failed to show a causal connection between his protected activity and termination.

Mr. Heiman appeals the district court's grant of summary judgment.

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms*, 165 F.3d at 1326. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326. "Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997) (quotation marks and citation omitted).

## DISABILITY DISCRIMINATION CLAIM

We first consider whether Mr. Heiman is a "qualified individual with a disability." *Steele v. Thiokol Corp*., ___ F.3d ___, 2001 WL 173698, at *4 (10th Cir. Feb. 22, 2001) (recognizing a showing of disability is a threshold matter for a Disabilities Act claim). The Disabilities Act defines an individual with a disability as someone who has, in part, "a physical or mental impairment that

substantially limits one or more of the major life activities of such individual."

42 U.S.C. § 12102(2)(A).  Pursuant to Equal Employment Opportunity

Commission regulations, "working" constitutes a major life activity.  *See Bolton*

*v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir. 1994) (relying on 29 C.F.R.

§ 1630.2(i)), *cert. denied*, 513 U.S. 1152 (1995).

To demonstrate that an impairment "substantially limits" the major life

activity of working, an individual must show "significant[] restrict[ion] in the

ability to perform either a *class of jobs* or a *broad range of jobs in various classes*

as compared to the average person having *comparable training, skills and*

*abilities*."  29 C.F.R. § 1630.2(j)(3)(i) (emphasis added).  "The inability to

perform a single, particular job does not constitute a substantial limitation in the

major life activity of working."  *Id*.

The following specific factors "should be considered" when determining

whether an impairment substantially limits a major life activity:  "(i) [t]he nature

and severity of the impairment; (ii) [t]he duration or expected duration of the

impairment; and (iii) [t]he permanent or long term impact, or the expected

permanent or long term impact of or resulting from the impairment."  29 C.F.R.

§ 1630.2(j)(2); *Bolton*, 36 F.3d at 943.  The following additional factors "may be

considered" when determining whether an impairment substantially limits the major life activity of working:

>(A) [t]he geographical area to which the individual has reasonable access;

>(B) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

>(C) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii); *Bolton*, 36 F.3d at 943-44 (recognizing the additional factors "may be considered," but holding summary judgment for employer is appropriate when the evidence failed to show the employee was restricted from performing a class of jobs, or to address the employee's vocational training and accessible geographical area). We apply these factors to the evidence Mr. Heiman submitted to avoid summary judgment.

The only evidence Mr. Heiman offers to overcome summary judgment is Mr. Santner's vocational report which he claims proves he is substantially limited in the major life activity of working and creates an issue of fact sufficient to

withstand summary judgment. [2] Even though the district court never questioned Mr. Santner's qualifications as a vocational expert, Mr. Heiman points out the court nevertheless rejected his conclusion Mr. Heiman was substantially impaired in the major life activity of working. Specifically, Mr. Santner concluded Mr. Heiman "lost the ability to perform approximately 30% of the jobs he might normally have been able to access prior to his injuries incurred at [United Parcel]." Accordingly, Mr. Heiman claims the district court erred by reasoning that a "30% diminution in [his] ability to obtain work in the greater Kansas City area was insufficient as a matter of law."

Contrary to Mr. Heiman's contentions, we cannot limit our focus solely on Mr. Santner's expert conclusion that Mr. Heinman suffered a thirty percent diminution in job availability. Such a limitation would prevent us from evaluating the merits of Mr. Santner's vocational report in light of the abovementioned Equal Employment Opportunity Commission factors. *See Bolton*, 36 F.3d at 943 (reviewing "the record for evidence of six factors set forth in the [Disabilities Act] regulations."); *see also Broussard v. University of California, at Berkeley*, 192 F.3d 1252, 1256-59 (9th Cir. 1999) (reviewing the

---

[2] Mr. Heiman does not claim he is substantially limited in any other major life activity besides "working."

merits of the vocational expert's report to determine whether plaintiff is substantially limited in working). Because we believe the whole report must be examined on *de novo* review, we detail the contents of Mr. Santner's vocational report.

Mr. Santner's expert report is divided into six sections: (1) records received and reviewed; (2) background; (3) work history; (4) medical restrictions; (5) procedures; and (6) conclusions. The labor market statistics are limited to the Kansas City, Kansas/Missouri metropolitan area.

In the "background" section, Mr. Santner acknowledges Mr. Heiman has a college degree in art, completed a nine-week police academy course and two computer courses, and has a commercial driver's license. Mr. Santner admits he did not consider in his report "professional jobs, typically requiring a college degree, since Mr. Heiman has never had a job which required one and, his degree in Art would be difficult to use even if it were current."

In his "work history" section, Mr. Santner details Mr. Heiman's employment history at United Parcel. Prior to working for United Parcel, Mr. Heiman worked as a dump truck and concrete truck driver. Each of these jobs

required Mr. Heiman to lift at least seventy-five pounds. Mr. Heiman also worked as a police officer.

Under "medical restrictions," Mr. Santner's report relies on Dr. Rondinelli's March 31, 1998 evaluation of Mr. Heiman. Dr. Rondinelli's report indicates:

> According to the Functional Capacity Evaluation mentioned above and previous testing in this regard, I believe Mr. Heiman meets the demands of a Feeder with [United Parcel] in regards to weight handling requirements, per se. Specifically, he qualifies for MEDIUM-HEAVY lifting below shoulder level which would allow him to lift loads not to exceed 75 lb on an occasional basis or 50 lb on a frequent basis below shoulder level. He qualifies for MEDIUM category of lifting at or above shoulder level which would allow him to lift weights not exceeding 50 lb occasionally or 25 lb frequently at or above shoulder level. He should seek assistance when lifting weights exceeding 50 lb at or above should[er] level or 75 lb below shoulder level....
>
> ... Although return to work as a "feeder driver" is **not medically contraindicated** based on the examination and testing carried out to date, I believe a prudent and judicious course from this point forward would be to reassign him, if at all possible, to a less physically demanding job with reduced requirements for materials handling.

(Emphasis in original.) Following this March 3, 1998 evaluation, Mr. Heiman continued in his feeder driver position until his termination on December 2, 1998.

In the "procedures" section of his report, Mr. Santner believes Mr. Heiman

-10-

retains "the capability of performing many jobs classified as medium or less, however not the entire range of medium jobs or[] jobs classified as heavy to very heavy." In other words, Mr. Santner considers Mr. Heiman, in his post-injury state, incapable of performing very heavy, heavy, and some medium classified jobs, but able to perform many jobs classified as medium or less. After this caveat, Mr. Santner explains he divided the data "into seven separate categories of jobs, not including those that would generally be classified as professional in nature .... Of the seven classes, Mr. Heiman would be considered to have lost a highly significant number of jobs in three of the categories and a significant number in one."

In his "conclusions," Mr. Santner suggests Mr. Heiman "lost the ability to perform [thirty percent] of the jobs" accessible to him prior to incurring his injuries. According to the report, "[e]ighty-five percent of this loss falls into the service, processing and miscellaneous categories of employment." While explicitly identifying these three categories, Mr. Santner's report does not identify four of the seven other categories he evaluated, or the total number of jobs Mr. Heiman is disqualified from performing due to his injuries. Despite this omission, Mr. Santner nevertheless concludes Mr. Heiman's major life activity of working was substantially impaired.

We believe there are several reasons why this expert's analysis is insufficient as a matter of law to show Mr. Heiman is disabled for purposes of the Disabilities Act. First, Mr. Heiman presents no evidence establishing his access to jobs is limited to the Kansas City metropolitan area, which is the exclusive area the expert analyzed. [3] *See Bolton*, 36 F.3d at 944.

The expert's report also fails to show the number of jobs Mr. Heiman is disqualified from performing due to his injuries. *See Bolton*, 36 F.3d at 944. The report identifies only three of the seven job categories considered in Mr. Heiman's vocational assessment: service [4], processing [5], and miscellaneous. [6] Even

---

[3] There is evidence in the record suggesting Mr. Heiman lived in Olathe, not Kansas City, when United Parcel terminated him. Moreover, he worked in Lexena, Kansas for United Parcel.

[4] The "service" category "includes occupations concerned with performing tasks in and around private households, serving individuals in institutions and in commercial and other establishments; and protecting the public against crime, fire, accidents and acts of war." United States Dep't of Labor, Dictionary of Occupational Titles, Ch. 3 (4th ed. 1991).

[5] The "processing" category "includes occupations concerned with refining, mixing, compounding, chemically treating, heat treating, or similarly working materials and products. Knowledge of a process and adherence to formulas or other specifications are required to some degree. Vats, stills, ovens, furnaces, mixing machines, crushers, grinders, and related equipment or machines are usually involved." *Id.* at Ch. 5.

[6] The "miscellaneous" category "includes occupations concerned with transportation services; packaging and warehousing; utilities; amusement, recreation and motion picture services; mining; graphic arts; and various miscellaneous activities." *Id*. at Ch. 9.

if we assume listing only three of the considered job classes is adequate, the expert's conclusion Mr. Heiman suffered a thirty percent diminution in job availability is unhelpful in the abstract. *Cf. Fjellstad v. Pizza Hut of Am., Inc*., 188 F.3d 944, 949 (8th Cir. 1999) (recognizing plaintiff created a factual dispute in whether employment opportunities are limited; "there were 28,000 available jobs in South Dakota that fit her vocational profile, but ... she is eligible for only about 1,300 of these jobs due to her functional limitations"). The mere percentage of lost jobs does not identify the number of jobs Mr. Heiman is actually disqualified from performing due to his injuries. *See Bolton*, 36 F.3d at 944. It is common sense there is a difference between disqualification from thirty percent of ten million jobs versus disqualification from thirty percent of ten jobs. Therefore, we hold the expert's report, which fails to indicate the total number of jobs Mr. Heiman is disqualified from as a result of his injuries, does not create a genuine issue of fact demonstrating Mr. Heiman is "substantially limited" in his major life activity of working. *See* 29 C.F.R. § 1630.2(j)(3)(ii). Such evidence is not significantly probative. *See Black,* 107 F.3d at 1460.

Furthermore, the expert's report, and ultimately his conclusion, is based on an incomplete vocational assessment. The expert disregarded Mr. Heiman's

-13-

college degree when assessing job availability and loss. [7] *See Bolton*, 36 F.3d at 944 (recognizing evidence did not address plaintiff's "vocational training"); *see also Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 724 (2d Cir. 1994) (concluding plaintiff was not hindered in her ability to work because she possessed advanced education degrees), *cert. denied*, 513 U.S. 1147 (1995). We do not accept the expert's conclusory dismissal of Mr. Heiman's college degree because he never used the degree, or because the degree was "not current" and would be "difficult to use." Mr. Heiman must be compared to "the average person having *comparable training, skills and abilities*." 29 C.F.R. § 1630.2(j)(3)(i) (emphasis added). In this instance, we must compare Mr. Heiman to an average person possessing a college degree in art.

Finally, even though the district court recognized Mr. Santner as a vocational "expert," his "legal" conclusion that Mr. Heiman suffered a substantial limitation in his major life activity of working does not create a genuine issue of material fact sufficient to withstand summary judgment. "Summary judgment is appropriate when an ill-reasoned expert opinion suggests the court adopt an

---

[7] Because we view the evidence and draw all reasonable inferences in the light most favorable to Mr. Heiman, we assume the expert considered Mr. Heiman's previous education and experience as a police officer when evaluating job availability. *See Simms*, 165 F.3d at 1326.

irrational inference, or rests on an error of fact or law." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 531 n.12 (5th Cir. 1999). As we previously discussed, Mr. Santner erred by assuming a thirty percent diminution in an unreported number of jobs is, as a matter of law, a substantial limitation. Moreover, his conclusion is based on an incomplete vocational profile.

Therefore, because Mr. Heiman's evidence fails to establish a genuine issue of material fact, we affirm the district court's determination he is not disabled within the meaning of the Disabilities Act. *See* 42 U.S.C. § 12102(2)(A). Summary judgment in favor of United Parcel on the disability discrimination claim is appropriate. [8]

## RETALIATION CLAIM

---

[8] Given our holding, Mr. Heiman's contention the district court erred in considering a Tenth Circuit unpublished opinion and not citing additional authority in reaching the same conclusion is unpersuasive. We also reject Mr. Heiman's suggestion that this case cannot be disposed on summary judgment because Mr. Santner was never afforded the opportunity to provide his details at trial, and United Parcel never elicited such details by deposition. A careful review of the record shows discovery was completed on July 1, 1999, *i.e.*, five months before the district court granted summary judgment. Thus, ample time and opportunity existed to seek, take, or supplement the record with Mr. Santner's deposition. Moreover, we have held "summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence" to rebut the movant's allegations. *Meyer v. Dans un Jardin*, *S.A.*, 816 F.2d 533, 537 (10th Cir. 1987) (quotation marks and citation omitted).

-15-

Although we hold Mr. Heiman's underlying disability discrimination claim fails, such failure does not prevent him from asserting a Disabilities Act retaliation claim. *See Beuttner v. Arch Coal Sales Co. Inc.*, 216 F.3d 707, 714 (8th Cir. 2000). The Disabilities Act's retaliation provision states "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the Disabilities Act] or because such individual made a charge ... under [the Disabilities Act]." 42 U.S.C. § 12203(a).

To establish a *prima facie* case of retaliation, Mr. Heiman must show: 1) he "engaged in a protected activity; 2) [he] was subjected to adverse employment action subsequent to or contemporaneous with the protected activity; and 3) a causal connection between the protected activity and the adverse employment action." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). United Parcel does not dispute Mr. Heiman satisfied the first two elements of his *prima facie* retaliation claim. We will assume, without deciding, Mr. Heiman engaged in two acts of protected activity by filing: 1) an Equal Employment Opportunity Commission complaint; and 2) a lawsuit alleging disability discrimination. United Parcel also admits Mr. Heiman suffered an adverse employment action because he was terminated. Thus, the first two elements of his *prima facie* case are presumed satisied.

Under the third element required to show retaliation, "[a] causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (quotation marks and citation omitted). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *Id.* We have previously "held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation." *Anderson*, 181 F.3d at 1179 (citations omitted).

*A. Temporal Proximity*

Both parties heavily rely on the temporal proximity between the protected activity and the adverse employment action, but they dispute the date the protected activity occurred. Mr. Heiman asserts his protected activity occurred on October 2, 1998, which is the date United Parcel was *served* with the lawsuit complaint. Thus, according to Mr. Heiman, only two months accrued between his protected activity and termination. In contrast, United Parcel suggests Mr. Heiman's protected activity occurred on or about June 19, 1997, which is the date

-17-

United Parcel *received* Mr. Heiman's Equal Employment Opportunity Commission charge. According to United Parcel, the time lapse was nearly eighteen months. We disagree with both contentions.

Both parties misunderstand what triggers a "protected activity." Protected activity is "the bringing of charges;" it is not *serving* an employer with a formal lawsuit or *receiving* an employee's Equal Employment Opportunity Commission complaint. *Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1262 (10th Cir. 1994); *see also Anderson*, 181 F.3d at 1178 ("By *filing* an [Equal Employment Opportunity Commission] claim, Plaintiff engaged in protected activity.") (emphasis added). We assume, without deciding, the two protected activities at issue here occurred when Mr. Heiman "filed" the Equal Employment Opportunity Commission complaint and his discrimination lawsuit. *See Amir v. St. Louis University,* 184 F.3d 1017, 1025 (8th Cir. 1999) (recognizing plaintiff's protected activity consisted of filing a grievance and a lawsuit against the university). Viewing the evidence in the light most favorable to Mr. Heiman, we must use the filing date most favorable to him. *See Anderson*, 181 F.3d at 1179. In this case, the most favorable filing date is that of Mr. Heiman's lawsuit, and not his Equal Employment Opportunity Commission complaint, which occurred

-18-

much earlier. [9]

Mr. Heiman filed his lawsuit in district court on June 8, 1998. Thus, nearly six months lapsed between the date of his last protected activity and termination. Our cases demonstrate that an intervening period of nearly six months is not sufficiently "close temporal proximity" such that an inference of causation is warranted based on timing alone. In light of our holding that six months accrued between filing his lawsuit and termination, we need not address Mr. Heiman's contention that two months by itself is sufficient to infer a causal connection.

B. *Additional Evidence To Establish Causation*

Having established Mr. Heiman's protected activity is too remote in time from his termination alone to justify an inference of causation, we next examine whether Mr. Heiman provided sufficient additional evidence of retaliatory motive. *See O'Neal*, 237 F.3d at 1253. We hold the evidence presented does not raise an inference of causation. [10]

---

[9] If the filing date for Mr. Heiman's Equal Employment Opportunity Commission complaint is considered, approximately one and one-half years lapsed between that protected activity and his termination.

[10] Because we hold there is insufficient temporal proximity and additional evidence to justify an inference of causation, we need not address United Parcel's contention the supervisors who terminated Mr. Heiman lacked knowledge of his protected

-19-

Mr. Heiman presents two types of additional evidence: 1) examples of other United Parcel employees who raised their voices at their respective supervisors, but were not terminated; and 2) alleged "inconsistent statements" made by Mr. Heiman's supervisors. He suggests this evidence "individually raise[s] questions of fact concerning the pretextual nature of [United Parcel's] position" and "support[s] a finding of causal connection ... [because] they constitute just the sort of 'other evidence' which may be considered by this court." In sum, Mr. Heiman presents evidence that goes to the issue of whether United Parcel's proffered reason for his termination is pretextual, rather than evidence establishing causation.

Mr. Heiman, however, misunderstands his initial burden of proof and the subsequent burden-shifting that occurs before this pretextual evidence is usually considered. A Disabilities Act retaliation claim proceeds under the same burden-shifting framework we use for Title VII retaliation claims. *Anderson*, 181 F.3d at 1178. Accordingly, Mr. Heiman first must establish a *prima facie* case of retaliation. *Id.* Once he establishes a *prima facie* case, the burden shifts to

_____

activity. "We will not undertake to decide issues that do not affect the outcome of a dispute." *Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir.), *cert. denied*, 502 U.S. 878 (1991).

-20-

United Parcel to "come forward with a non-discriminatory reason for its employment decision." *Id*. If United Parcel presents a non-discriminatory reason, the burden shifts back to Mr. Heiman to show "there is a genuine issue of material fact as to whether the employer's proffered reason for the challenged action is pretextual, *i.e.*, unworthy of belief." *Id.* (quotation marks and citation omitted).

Even if Mr. Heiman understands the nature of his burden at the *prima facie* stage, he fails to articulate how the pretextual evidence he presents supports an inference that filing a lawsuit motivated United Parcel to terminate him. First, Mr. Heiman's proffered evidence of other United Parcel employees who allegedly engaged in misconduct is insufficient because it is not probative of causation between Mr. Heiman's act of filing a lawsuit and his termination.[11] *See Black,* 107 F.3d at 1460.

The other type of pretextual evidence concerns alleged inconsistent

---

[11] Of the evidence that actually identifies a specific employee, it is undisputed two of them did not share Mr. Heiman's same supervisor. *See generally Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1223 (10th Cir. 2000). In addition, uncontroverted deposition testimony shows the two remaining employees did not engage in conduct comparable to Mr. Heiman's.

statements made by his supervisors. However, even if we assume *arguendo* that an employer's inconsistent reasons for termination can create an inference of causation, Mr. Heiman still fails to show United Parcel made inconsistent statements. *Cf. Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281, 285-86 (3d Cir. 2000) (recognizing employee did show, in addition to other evidence, the employer's reasons for termination were inconsistent). Specifically, Mr. Heiman argues his supervisors, in deposition, attributed his termination solely to his insubordination and failure to follow instructions at the November 23, 1998 meeting. In contrast, Mr. Heiman notes United Parcel's termination letter cites both the November 23 meeting and the November 19 incident involving his argument with Mr. Larkin. In other words, Mr. Heiman contends the fact that there were two incidents causing his termination rather than one establishes an inconsistency sufficient to justify an inference of causation. We do not agree.

The two incidents are entirely consistent with each other. United Parcel's reference to the "serious incident" occurring on November 19 supplements, rather than contradicts, his supervisors' reason for firing him. The November 19 incident merely precipitated the need for the November 23 meeting where Mr. Heiman's insubordination and failure to listen and follow instructions resulted in his termination. As the termination letter stated, "[t]his type of behavior will not

be tolerated at United Parcel Service." Thus, while the termination letter cites both the meeting and Larkin incident as contributing to Mr. Heiman's termination, this statement clearly shows Mr. Heiman's behavior at the November 23 meeting is the behavior that ultimately led to his termination. Any perceived inconsistency in this evidence does not support an inference of causation.

Therefore, based on our independent review of the evidence, we hold Mr. Heiman fails to establish a *prima facie* case of retaliation under the Disabilities Act. Neither the six-month lapse between filing a lawsuit and termination alone, nor the additional evidence, establish a causal connection. Therefore, summary judgment in favor of United Parcel on the retaliation claim is appropriate. Thus, "[w]hile the burden [of establishing a Disabilities Act *prima facie* case] is 'not onerous,' it is also not empty or perfunctory." *Butler v. City of Prairie Village*, 172 F.3d 736, 748 (10th Cir. 1999) (quotation marks and citation omitted). In summary, Mr. Heiman fails to establish a *prima facie* case of disability

discrimination or retaliation, and we **AFFIRM** the district court's grant of

summary judgment in favor of United Parcel.


          **Entered by the Court:**

          **WADE BRORBY**
          United States Circuit Judge

**SEYMOUR**, Circuit Judge, concurs in the judgment.